[Civ. No. 15474.   First Dist., Div. One.   May 12, 1953.]

EDWARD F. PIERCE et al., Respondents, v. FORREST E. WRIGHT et al., Defendants; BERTIE PARKHURST, Appellant.

Joseph A. Brown for Appellant.

W. O. Wissich and Leland H. Jordan for Respondents.

BRAY, J.—Defendant Bertie Parkhurst appeals from a judgment against him in the sum of $5,185.50 on a surety bond.

## QUESTIONS PRESENTED

1. Was the bond given without consideration?
2. Was it procured by fraud?
3. Effect of alleged failure to comply with contract provisions.
4. Was the bond void for uncertainty?
5. Did the court fail to find on material issues?

## EVIDENCE

In May, 1949, plaintiffs were getting bids for the construction of a home and were introduced to Wright, a contractor. June 2d, plaintiffs applied to the San Francisco Federal Savings and Loan Association† for a construction loan. Their architect insisted on plaintiffs' requiring a performance bond, and provided in the specifications "the contractor will furnish the owner a performance bond—before submission of the bid." June 8th, plaintiffs entered into a contract with Wright in which he agreed to construct the house according to the plans and specifications for $10,371. There is no mention of a bond in the contract itself, except a statement to the effect that changes in the work for which provision was made would not invalidate the agreement "nor

---

†Hereafter referred to as "the association."

exonerate any surety upon any guaranty or bond given in connection herewith . . .'' June 25th, a supplementary written contract was entered into between plaintiffs and Wright. It expressly incorporates the first contract, recites that plaintiffs have applied to the association for a loan to be secured by a first deed of trust upon the property and the improvements to be constructed thereon, states that it is being expressly made primarily for the benefit and protection of the association and a title company, and in further consideration of their making a loan and issuing title insurance; ''That this agreement amends, modifies and alters the construction contract, Exhibit 'A' hereof, in part, and supercedes said agreement in each and every respect, in which the two agreements are or may be inconsistent, but not otherwise''; ''The Contractor hereby agrees to give the owner a personal surety for the satisfactory completion of the construction free from any claim or liability of any nature whatsoever.''

On either the first day of June or of July plaintiffs told Wright to proceed to construct the house. Actual work started about the middle of July. Up to this time no bond had been given, although the architects and plaintiffs had asked Wright to do so. Wright apparently was unable to get a surety company bond, and in the supplementary agreement it was agreed he could give a personal surety bond. August 23d, over a month after construction had started, Wright delivered the bond in question here. It is dated August 23d, and signed by both Wright and defendant. A portion of the bond follows:

''PERFORMANCE BOND

''KNOW ALL MEN BY THESE PRESENTS:

''That WHEREAS, _____ California, by Resolution No. _____, passed Forrest E. Wright _____ hereinafter designated as the 'Principal,' a contract for construction one sotre basement and carport residence for Edward Fairchild Pierce and Betty Ann Pierce, at Corte Madera, Parcel 15 KBS tract

''WHEREAS, said principal is required under the terms of said Contract to furnish a bond for the faithful performance of said Contract,

''Now, THEREFORE, we, the principal and Bertia Parkhurst [sic] as surety, are held and firmly bound unto _____ hereinafter called the Owner, in the penal sum of $5185.50

(five Thousand one hundred and eighty-five dollars and fifty cents . . ."

There then follow suretyship provisions in which the surety is designated as "it," and the instrument recites that the surety "for value received," waives certain rights, that of notice of a change, alteration or addition to the terms of "the Contract" or work to be performed thereunder or under the specifications accompanying it, and of extension of time.

In late April, 1950, when the work was about 60 per cent completed, Wright abandoned the contract and became a fugitive from justice. Materialmen's liens were filed against the property. Plaintiffs finished the construction themselves, and then brought suit against Wright for breach of contract and defendant on the bond for the amount necessary to make them whole.

### 1. *Was the Bond Given Without Consideration?*

Defendant contends that it was, for the reason that both the original and supplementary contracts had been executed and the work begun prior to the execution of the bond. He supports this contention by reference to the general rule that where, as here, no premium is paid and the suretyship contract is entered into subsequent to, and entirely apart from, the principal contract, the consideration given to the principal alone for the already executed contract is regarded as a past consideration in relation to the suretyship contract, and that unless there is a new consideration, the surety is not bound. (See 50 C.J. 49; *Bank of Italy* v. *Wetzel,* 82 Cal.App. 240 [255 P. 254] ; *Leverone* v. *Hildreth,* 80 Cal. 139 [22 P. 72].) This rule, however, does not apply here, for the reason that both the original contract and the supplementary one provided that Wright should give a bond. This provision being for his benefit, he could waive the time for filing the bond, which under the specifications was to have been given with the bid. (See *Bakersfield Imp. Co.* v. *Bakersfield etc. Co.,* 40 Cal.App. 703, 706 [181 P. 851].) In none of the above and other cases cited by defendant where the giving of a bond subsequent to the delivery of the contract was held to be without consideration, was there a bond *given pursuant to the provisions of the contract.* It is true that there is no evidence that defendant received from Wright any monetary consideration for signing the bond. This fact, however, is not important. The contract required Wright to put up a bond. Pursuant to it, Wright produced the bond executed by defendant.

The bond itself is presumptive evidence of consideration. (Civ. Code, § 1614.) The burden of showing a want of consideration was upon the party attempting to overcome the presumption. (*R. H. Herron Co.* v. *Flack,* 46 Cal.App. 374 [189 P. 294].) This, under the court's findings, the defendant did not do. ■ As said in *Keating* v. *Morrissey,* 6 Cal.App. 163, 168 [91 P. 677] : ". . . it was within the exclusive province of the jury to declare whether the evidence offered to overcome the presumption of consideration for the note was of sufficient strength to do so or not. . . . A court or jury is not bound to believe an interested witness as against a presumption if the latter satisfies its mind. [Citations.]" ■ The general rule that without additional security a surety is not bound by his signature made after the execution of the contract by the principals does not apply where the surety is procured in pursuance of a provision of the contract. (*Stroud* v. *Thomas,* 139 Cal. 274 [72 P. 1008, 96 Am.St.Rep. 111] ; *Leverone* v. *Hildreth, supra,* 80 Cal. 139, 140 ; 50 C.J. 48 ; 167 A.L.R. 1185.)

2. *Was the Bond Procured by Fraud?*

■ Defendant is an alcoholic and contends that his signature was obtained by Wright while defendant was blind drunk. He testified he did not remember signing the bond. Both he, a Mrs. Mattern who is a joint tenant with defendant in the property where he was staying, and her niece, testified that in August, when Wright came to see him, defendant had been drunk in bed in his room for about a week. Defendant could not remember the circumstances but his two witnesses testified that Wright asked defendant if he would sign a character reference. They did not see defendant sign anything, however. On one occasion Wright brought defendant to the job while the house was under construction and both Wright and defendant looked the work over and commented on it. Wright stated that he was glad that defendant "had finally come over to the job." Defendant then appeared to be sober. After Wright had cashed some bad checks and fled, a deputy sheriff came to defendant, and in the conversation defendant admitted that he had signed a surety bond on the house, was "stuck," and that he would have to pay off any balance on the house. Mrs. Mattern was present and neither defendant nor she stated that defendant was drunk when he signed the bond. When the architect phoned him to come in and discuss the Wright situation as

he was on the bond, he did not deny it or claim to have signed it while drunk. He stated, "I am a heavy drinking man. I don't have money. There is nothing I can do about the bond." Later the architect mailed a letter to defendant demanding that he make good on the bond, but received no reply. Defendant contends that there is no contradiction of his testimony and that of his two witnesses that at the time he signed the bond he was too drunk to be able to transact business, and that the court must take their uncontradicted evidence at face value. While there was no direct contradiction, the court had the right to consider the interest of both defendant and the two witnesses, defendant's actions at the job, his statements to the deputy sheriff, and his and Mrs. Mattern's failure to state to the deputy his claim as to his condition at the time he signed the bond. These and all the circumstances in the case, were sufficient to support the court's implied finding that he did know what he was doing. These facts show that the refusal of the court to believe defendant and his witnesses was not arbitrary, thereby making inapplicable the rule discussed in the minority opinion in *Stewart* v. *Silva,* 192 Cal. 405 [221 P. 191].

As to defendant's contention that his signature on the bond was "of a very dubious character," the court saw that signature and compared it with exemplars of his signature taken in court, and apparently concluded that it was not dubious.

It must be remembered that no claim was made that plaintiffs perpetrated the fraud, if any was perpetrated, or had knowledge of it. ■ "The rule is well settled and generally followed that fraud of the principal debtor will not relieve the guarantor or surety who acted at the request of the debtor from liability, if the creditor did not have notice of the fraud and did not participate therein." (*Simon Newman Co.* v. *Tully,* 13 Cal.2d 134, 137 [88 P.2d 131].) (See *Crumrine* v. *Dizdar,* 59 Cal.App.2d 783, 787 [140 P.2d 101].)

3. *Alleged Failure to Comply With Provisions of Contract.*
■ Defendant contends that this action must fall because of plaintiffs' failure to comply with two provisions of the contract, the first requiring notice to the contractor in certain contingencies. The 10th and 11th articles of the contract provided that if the contractor failed to supply sufficient material or workmen to complete the contract after five days' notice from the owner, or if the contractor discontinued or abandoned the work for more than 10 days, the owner, upon

five days' notice to the contractor, could finish the work. Wright abandoned the job in April. The exact date is not given but it was sometime prior to June 22d, when a deputy sheriff testified that Wright, who had been arrested for bad checks, jumped bail, leaving a suicide note. Plaintiffs did not take over the work until October. Obviously, a notice by the owner could not be given under those circumstances.

The law does not require an impossibility. In both *Bacigalupi* v. *Phoenix Bldg. etc. Co.*, 14 Cal.App. 632 [112 P. 892], and *New England etc. Co.* v. *Chicago etc. Co.*, 36 Cal.App. 584 [172 P. 1122], the contracts contained notice requirements similar to those in our case. Both cases held that such notices are unnecessary where the contractor, as here, *entirely abandons the contract.*

The second provision concerns arbitration. The 15th article provides, "Should dispute arise as to the true meaning of the plans and specifications, or respecting the manner or sufficiency of the performance of any work thereunder, or respecting the character or value of extra work or work omitted, the questions in dispute shall, in the first instance, be decided by the architect; but should either owner or contractor be dissatisfied with his decision, the question shall, on written demand of either . . ." provision is made for arbitration. Just how plaintiffs could enter into arbitration with a fugitive from justice, defendant does not explain. More important, however, is the provision for arbitration itself. It does not require arbitration in the event of a total abandonment. The arbitration applies only to a dispute as to certain matters (none of which are in dispute here) between the parties. Moreover, in the event of such dispute the questions in dispute are to be decided in the first instance by the architect. It is only if the owner or contractor is dissatisfied with the architect's decision that the arbitration clause comes into effect, and then only if one of them makes written demand for arbitration. No such demand was made either by Wright or defendant, nor did defendant plead such failure to arbitrate. "In the proceeding in the superior court plaintiffs did not contend, however, that the question whether the assignment was valid should be determined by the arbitration board; they submitted that issue to the court without reservation. A party waives his right to arbitrate an issue by failing to plead such right." (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335, 339 [182 P.2d 182].) (See, also, *Landreth* v. *South Coast Rock Co.*, 136 Cal.App. 457

[29 P.2d 225]; *Pneucrete Corp.* v. *United States Fid. & G. Co.,* 7 Cal.App.2d 733 [46 P.2d 1000].)

In *Clogston* v. *Schiff-Lang Co., Inc.,* 2 Cal.2d 414 [41 P.2d 555], there was a clause for arbitration in the contract where ''differences'' arose between the parties. Plaintiff sued for breach of contract. Defendant demurred for failure to allege that plaintiff had complied with the arbitration clause. The demurrer was overruled. Defendant then set up that failure as a defense. The Supreme Court held that the failure to arbitrate the contractual ''differences'' barred a recovery. That case, however, is distinguishable from ours, both in the fact that the pleadings in nowise raise the question of lack of arbitration, and in that this action is not based on contractual ''differences'' but a complete abandonment of the contract.

### 4. *Was the Bond Void for Uncertainty?*

It is obvious that the prepared form of the bond was one originally intended for a public works contract. However, it is clear from a reading of the contract that in spite of the blanks left unfilled it was intended as a bond for the performance of the contract for the construction of a ''one so*t*re [story] basement and carport residence for Edward Fairchild Pierce and Betty Ann Pierce, at Corte Madera, Parcel 15 KBS tract.'' Although it stated that the principal and the surety were bound ''unto——— hereinafter called the Owner'' and later referred to the ''owner, its officers and agents,'' it is clear that it was referring to plaintiffs. At the time of signing the bond, both the original and the supplementary contract had been executed and constituted one contract. (See *Division of Labor L. Enforcement* v. *Safeway Stores, Inc.,* 96 Cal.App.2d 481 [215 P.2d 773]; 6 Cal.Jur. 298.) There was no uncertainty as to what contract was meant; it was the contract for the construction of the residence for plaintiffs. Here the original contract and its modification constituted but one contract. Defendant cites cases to the effect that a surety is discharged by any material alterations in the terms of the contract made without his consent. No such alteration was made *after* the execution of the bond. It might be pointed out, too, that the bond provided that no change in, alteration of or addition to the terms of the contract should affect the obligation of the bond and defendant expressly waived notice of any change, alteration or addition. (See *Blackwood* v. *McCallum,* 187 Cal. 655 [203 P. 758], for the effect of such provision.)

## 5. *Findings.*

There was no issue in the pleadings concerning lack of arbitration. At the end of the case defendant mentioned it to the court as "highly technical" as to which he was "not too sold on that point." Therefore, the court was not required to find that there had been no demand for arbitration, a fact that was freely admitted by everyone.

In paragraph IV of the answer, and in the second separate defense, defendant alleged that if he signed the bond he did so because Wright represented to him that it was merely a recommendation of Wright, and that defendant was in no condition to understand the import of the document. Concerning the allegations of misrepresentation by Wright, the court did not find in the exact words of the answer. However, it did find that at the time defendant executed the bond he was "of sound mind and mentally capable of entering into a contract and was not intoxicated," and that the bond was not procured by Wright by means of fraud or false or fraudulent representations of any kind. This was a sufficient finding that the allegations of misrepresentation in the answer were not true. A finding does not necessarily have to be in the exact language of the pleading. A finding of the ultimate fact or facts is sufficient. (*Bloss* v. *Rahilly,* 16 Cal.2d 70 [104 P.2d 1049].) In *Publishers Distr. Service* v. *Southern Cal. S. B. Depository, Ltd.,* 14 Cal.App.2d 448, 449 [58 P.2d 401], the court said: ". . . the allegations of fraudulent representations are disposed of by one blanket finding to the effect that 'defendant made no fraudulent representations or inducements to procure said agency contract,' without particularizing as to each alleged item of fraud.. The court's general finding that no fraudulent representations or inducements were made to procure the agency contract would of itself be sufficient to support the judgment denying appellant any relief."

At the trial defendant stipulated to the claims of lien filed against the property and their amounts, and that if the lien claimants were called they would testify that the materials for which the claims were made were delivered for and used in the construction of plaintiffs' house. The court gave plaintiffs judgment for the amounts of these claims. In his opening brief defendant calls attention to the fact that the amounts claimed were not paid by plaintiffs at the time of trial. Just what his point is in this behalf, if any, does not appear.

In *Ceremony* v. *Drummond,* 37 Cal.App. 446 [174 P. 696], it was held that the contractor's bond is a contract of indemnity against liability rather than one of indemnity against loss sustained and paid, and that the failure of the contractor to keep the property free from liens justifies the owner in suing on the bond even though he has not satisfied the claims of the lien claimants. At the trial he is required to establish the validity of the lien and the amount of the indebtedness. In our case the stipulation did this and no contention was made that the plaintiffs had not met this burden.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 11, 1953, and appellant's petition for a hearing by the Supreme Court was denied July 9, 1953.