[Civ. No. 115. Fifth Dist. Nov. 30, 1962.]

RALSTON-PURINA COMPANY, Plaintiff and Respondent,
v. HERMAN G. CARTER, Defendant and Appellant.

Lawrence L. Light for Defendant and Appellant.

Cook & Cook and Jeremy C. Cook for Plaintiff and Respondent.

BROWN, J.—This appeal is from a judgment in favor of the plaintiff allowing recovery for the balances due on promissory notes. The appellant-defendant, H. G. Carter, has been held liable in his capacity as guarantor of John Richards, a nonappealing defendant, for $7,616.33 principal, $1,642.57 interest, $2,537.55 attorneys' fees and $349.80 costs.

In the complaint filed April 24, 1959, the respondent set forth 20 causes of action based on "Delivery Receipts and Notes," each of which was signed and executed by defendant John Richards. The 21st cause of action was based upon a written guaranty executed May 15, 1957, in which appellant agreed to guarantee to respondent the payment of the purchase price of such merchandise as the grower, defendant John Richards, might select. The guaranty further provided that appellant would hold himself responsible for the payment of the purchase price of such merchandise sold by plaintiff to Richards to the extent of $21,000, and also provided that the liability of appellant would not be reduced by the collection of any part from Richards and that the indebtedness might be evidenced by open account, trade acceptances, promissory notes or otherwise.

Thereafter, on June 6, 1957, Richards entered into a Turkey Chow Contract with respondent, known as contract No. 490, covering commercial feeds, tonics, disinfectants and worming medicines of respondent's brands required for a second flock of turkeys to be grown by Richards. The estimated needs and the expense thereof as set forth in the contract were 450 sacks of Turkey Startena at $2,700, 1,425 sacks of Turkey Chowder at $8,550, 243 tons of grain at $12,150, and 6,500 turkey poults at $4,500. Richards agreed to execute delivery receipts and promissory notes covering the

price of each order of merchandise, when received, payable on January 1, 1958, or upon the sale of the turkeys, whichever event would first occur.

In the fall of 1957 certain turkeys were sold and the proceeds applied to close in full a prior account, No. 489, and the balance of the sales price was credited to account No. 490 on November 5, 1957, in the sum of $7,271.37, which, according to defendant's exhibit of the ledger sheet of respondent, showed a balance due of $11,437.30 on account No. 490 as of that date.

The practice of respondent upon the delivery of merchandise to Richards was to have Richards sign a delivery receipt and note (which was similar to an invoice of the itemized merchandise with a promissory note at the bottom) in which interest was computed and added, and as payments came in, to apply these receipts on either open account or on whatever notes the respondent desired to mark "Paid." The 20 notes and delivery receipts the subject of this action were dated from August 28, 1957, to and including December 10, 1957. Six of the delivery receipts and notes were on printed forms of respondent and showed the route of delivery through Sierra Feed and Farm Supply, Merced. Fourteen notes were on similar forms of respondent but showed delivery by Feed Barn, Chowchilla. The 20 notes totaled $7,693.39.

Thereafter, more turkeys were sold for $15,301.75 and this amount was credited to the ledger account on January 16, 1958, at which time, according to defendant's exhibit of the ledger card, there was a balance due of $3,581.13. The ledger statement does not necessarily indicate each and every note sued upon but is more or less a summary of purchases during the life of contract No. 490 and as respondent states, the suit is maintained on the unpaid 20 notes and is not being maintained upon the ledger account.

On August 4, 1959, defendant John Richards stipulated to the taking of a judgment. The matter was partially tried on May 5th and 6th, 1960, and continued, and trial was completed on November 9th and 10th, 1960. Judgment was entered and filed against Richards and appellant on July 3, 1961. The court found in its findings of fact that the allegations as to the first 20 causes of action were true and that the allegations as to the 21st cause of action which has to do with the guaranty executed by appellant were true in that the respondent sold the merchandise to Richards who had

received the merchandise and that the notes represented the purchase price of that merchandise.

In considering the contentions of appellant we must be guided by the rules governing appellate review that all conflicts must be resolved in favor of the findings and the judgment *(Butler* v. *Nepple,* 54 Cal.2d 589, 597 [354 P.2d 239]); where there is a conflict in the testimony, the trial court's determination of that conflict is conclusive on appeal *(Luz* v. *Lopes,* 55 Cal.2d 54, 62 [358 P.2d 289]); and when a judgment is attacked as being unsupported, the power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact *(Key* v. *McCabe,* 54 Cal.2d 736, 738 [356 P.2d 169]).

Appellant makes the contention that Richards received some cash from respondent by various and sundry manipulations. Richards, living on appellant's property, was in need of funds with which to live during the process of raising the turkeys and seemed to have no outside income.

Exhibits 1 and 2 of respondent, Delivery Receipts and Notes, cover the purchase of certain barley ($221.15) and alfalfa hay ($235.29) and show the route of delivery through the Sierra Feed & Farm Supply, Merced. Defendant John Richards testified that he bought the hay from Joe Souza and the barley from P. J. Wolfsen and paid for both personally. There was conflicting evidence that he did not purchase either item. Richards then contacted Lester M. Hall, respondent's agent, who, on October 5, 1957, wrote a note to Jim Hagerty, respondent's credit manager, stating that Richards had purchased the hay and barley and wanted respondent to finance the payment. On October 8, 1957, respondent made out a check to Richards for $437.60, which is the actual amount paid to Souza and Wolfsen. On the same date Richards executed delivery receipts and notes to respondent, one in the amount of $221.15 for the barley, and the other in the amount of $235.29 for the alfalfa hay. Whether Richards actually purchased hay and barley from third persons and received cash reimbursement therefor from respondent or whether he executed purely fictitious delivery receipts and notes is immaterial from the standpoint of appellant. The testimony, viewed from either side of the conflict, clearly establishes that respondent did not sell this merchandise to Richards but gave him cash reimbursement.

These items are not within the scope of appellant's guaranty and he has no liability therefor. There are other discussions in the testimony as to a similar procedure, without detail.

The appellant's submission of bank statements of Richards showing deposits in his account, without other testimony as to the actual source of those funds from respondent, is not proof that Richards was receiving cash instead of merchandise. However, Richards admitted that he had received various sums from respondent which he testified that he used to buy certain grain and other necessities from other sources in connection with raising the turkeys and that the most he ever received for himself was about $200 per month for about four months, totaling $800. It is respondent's contention that none of the notes sued upon cover any of these transactions and there is a conflict in the evidence which was resolved in respondent's favor. Upon learning that Richards had received certain cash from respondent, the appellant objected thereto, but Richards testified that he had not drawn any cash after July 1957. All the notes sued upon were executed after that date.

It is appellant's further argument that the Sierra Feed store and the Feed Barn were the ones that sold the merchandise to John Richards and that his guaranty was only for merchandise purchased from respondent. It was stipulated that the two stores were not agents of respondent but were dealers. Appellant's contention that the merchandise was purchased from these two stores and not from respondent is without merit. Although Richards testified that in accordance with his arrangements with respondent he ordered merchandise as needed from Sierra Feed store and the Feed Barn, there is no testimony that either store ever sent any bills direct to him or looked to him for payment. It is apparent that the Sierra Feed store and the Feed Barn were mere conduits through which Richards purchased plaintiff's products. The delivery receipts and notes are on stationery of respondent showing its name in print on the delivery receipt portion as well as appearing twice in the note portion as payee, and shows only the route of delivery through the Sierra Feed store or delivered by the Feed Barn. Thus, the delivery of merchandise by third parties for the benefit of the seller to the buyer does not relieve the guarantor of his contract to guarantee the payment to the seller of that merchandise.

The guaranty was for merchandise only, but this

does not include the guaranty of cash given to John Richards even though that cash was used to reimburse him for merchandise which he had bought from other sources. While appellant contends that the receipt of this cash is such as to terminate his guaranty, we do not so hold. The guaranty was only for merchandise and while John Richards is responsible for the notes which he signed, the guarantor is not responsible for anything other than merchandise.

The practice of respondent's agent in arranging for Richards to get cash is not a departure from the terms of appellant's guaranty but cash amounts are not guaranteed. A guarantor is released if the original obligation is altered (Civ. Code, § 2819) and a guarantor is not liable upon any contract not within the terms of his guaranty *(Garfield* v. *Ford,* 191 Cal. 69, 71 [214 P. 963]). Parties to an obligation cannot alter its terms without the guarantor's consent even though it may be to the guarantor's advantage *(McManus* v. *Temple Estate Co.,* 10 Cal.App.2d 419, 421 [51 P.2d 1124]). In our present case we see no alteration of the guaranty but merely an attempt by the recipient thereof to charge the guarantor with items under the guaranty for which he is not liable. This is not an alteration.

Appellant contends that the trial court erred in including in the judgment the sum of $4,132.08 covering the price of turkey poults purchased by Richards on June 7, 1957, because poults are not merchandise. We need not decide whether poults are merchandise within the meaning of the guaranty for an examination of the delivery receipts and notes which form the foundation of this action fails to show any charge for poults and the purchase occurred prior to the date of any of the notes. It follows that the judgment does not include the charge of which appellant complains.

The letter of guaranty does cover any and all types of merchandise, grinding, mixing and medicines, if they were in fact delivered to and received by the grower, John Richards, but does not include financing charges other than lawful interest.

As respondent points out in its brief, the testimony shows that the notes sued on (totaling $7,693.39) had not been paid according to the terms and that these are the only debts outstanding and that it is not suing on the ledger statement (balance $7,693.32).

Appellant complains that he was not allowed to cross-examine defendant John Richards, but in examining the record

we find that appellant's attorney cross-examined him on three occasions when Richards was called as a witness under Code of Civil Procedure section 2055. Appellant claims that he and Richards are adverse witnesses and that he was entitled to call Richards under section 2055. The determination of the status of a witness, whether adverse or not, is a matter primarily for the trial court (*Petersen* v. *Donegani*, 27 Cal.App.2d 431, 432 [80 P.2d 1001]). Whether appellant and defendant Richards are adverse witnesses it is unnecessary for us to determine as we think there was no abuse of discretion by the court. Appellant's counsel did cross-examine Richards and the substantial rights of appellant were not materially prejudiced in this matter *(Guillory* v. *Godfrey*, 134 Cal.App.2d 628, 634 [286 P.2d 474]; *Litt* v. *Litt*, 75 Cal.App.2d 242, 244 [170 P.2d 684]).

The judgment ordered appellant to pay attorneys' fees which were computed on each of the notes and charged as a total sum against appellant. "Generally, attorneys' fees are not recoverable either as costs, damages, or otherwise, unless there is express statutory or contractual authority therefor." (46 Cal.Jur.2d, Suretyship and Guaranty, § 69, p. 326.)

The complaint in this matter failed to pray for attorneys' fees as far as appellant is concerned. The guaranty as hereinabove set out covers merchandise only, and appellant guaranteed payment of the purchase price due thereunder to the extent of $21,000, and no mention was made therein that he would pay attorneys' fees. Though the contract further provides that the liability would not be reduced because of payments on account, it only states that the indebtedness may be evidenced by open account, trade acceptances or promissory notes.

Our attention has not been directed to a case precisely in point on the facts. However, the principles expressed in *Chinn* v. *Penn*, 179 Cal. 153 [175 P. 687], are applicable. In the cited case the appellant had guaranteed by endorsement a promissory note secured by a mortgage which provided for attorneys' fees and other charges as to which the note was silent. That portion of the judgment against the guarantor which included attorneys' fees and other charges was held to be erroneous on the rationale that the endorsement of the note guaranteeing that instrument could not be extended by implication to cover the obligations contained

only in the mortgage. In our case the guaranty preceded the making of the promissory notes. It contained no obligation for attorneys' fees. Appellant's guaranty for the payment of merchandise, the indebtedness therefor to be evidenced by "open account, trade acceptances, promissory notes, or otherwise" cannot be extended to cover obligations other than for merchandise contained in any of the agreed methods of evidencing such indebtedness. Nor do the words "promissory notes" contained in the guaranty carry an implied obligation to pay attorneys' fees. A promissory note, under the provisions of Civil Code section 3083 may provide for attorneys' fees but does not necessarily have to do so, and section 3265 defines "promissory note."

The record does not disclose any evidence tending to show that appellant, at the time of execution of the guaranty, contemplated liability on his part for attorneys' fees by virtue of the provisions of promissory notes to be made in the future. We are thus brought to the conclusion that the allowance of attorneys' fees as against appellant is erroneous.

Appellant demanded that plaintiff pursue its remedies against John Richards, as indicated by the exhibit in evidence, and claims that by this demand and the refusal of the plaintiff to comply therewith and the failure of plaintiff to exhaust its remedies, plaintiff failed to take a judgment against Richards even though Richards had executed a stipulation for judgment earlier, which he filed on August 4, 1959.

Civil Code section 2845 covers exoneration of sureties under certain conditions, and section 2787 abolishes the distinction between sureties and guarantors. Section 2807 states that, "A surety who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the principal, and without demand or notice."

In *Bank of America* v. *McRae*, 81 Cal.App.2d 1, 7 [183 P.2d 385], the court quotes from 13 Cal.Jur., Guaranty, section 22, page 110, as follows: "The liability of the guarantor of an absolute and unconditional guaranty is fixed when the principal obligation matures and is not predicated upon the exhaustion by the creditor of his remedies against the principal debtor, or the exhaustion of other security for the debt; and it is immaterial whether the debtor can or cannot pay the debt."

Here, the plaintiff sued both the principal and the guarantor and such claims or connected transactions may be united (Code Civ. Proc., § 427). And the joining of a

surety and his principal in the same action is authorized by Code of Civil Procedure section 383, which says that persons liable on the same or separate instruments may be included in the same action. Testimony in this matter brought out that John Richards had only two assets, a building which he valued at $18,000 and against which there was a $20,000 debt, and an automobile which he valued at $500 against which there was a lien of $6,000.

"Indeed, as a matter of practical importance, it is rather a favor than otherwise, in a case like this, to join the guarantor with the maker of the note. He is thus afforded an opportunity to aid the plaintiff in securing, if possible, the payment of the entire indebtedness from the principal debtor." *(Titus* v. *Woods,* 45 Cal.App. 541, 546 [188 P. 68].) We find that appellant was not discharged from any liability under the guaranty because of respondent's refusal to proceed against defendant John Richards.

The cause is remanded to the superior court and that court is directed to modify the judgment against appellant by striking therefrom any charges for insurance, the cash reimbursement to Richards of $437.60, the allowance of $2,537.55 attorneys' fees, and by adjusting the interest allowed accordingly. As so modified, the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied December 28, 1962, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1963.