[Civ. No. 52489. Second Dist., Div. Two. Oct. 20, 1978.]

SUKUT-COULSON, INC., Plaintiff and Respondent, v.
ALLIED CANON COMPANY et al., Defendants and Appellants.

SUKUT-CONSTRUCTION, Plaintiff and Respondent, v.
STUYVESANT INSURANCE COMPANY, Defendant and Appellant.

CABOT, CABOT & FORBES LAND TRUST,
Plaintiff and Appellant, v.
AMERICAN INSURANCE COMPANY,
Defendant and Respondent.

## COUNSEL

Brown & Brown and Howard B. Brown for Plaintiff and Appellant and Defendant and Appellant Cabot, Cabot & Forbes Land Trust and for Defendant and Appellant Allied Canon Company.

Anderson, McPharlin & Conners and Eric Winter for Defendant and Appellant Stuyvesant Insurance Company.

George S. Halversen for Plaintiffs and Respondents.

Peter A. Lewis for Defendant and Respondent.

## OPINION

FLEMING, J.—Three consolidated actions which center on the claim by Sukut-Coulson, Inc. (Sukut) for money due for labor and materials furnished subdivider Allied Canon Company (Allied) in connection with the construction of a public improvement project.

As a condition of development for a Benedict Canyon subdivision, Allied was required by the City of Los Angeles, under Business and Professions Code section 11612,[1] to procure labor and materials bonds for the benefit of contractors, laborers, and materialmen involved with the public improvements in the project. Accordingly, on 27 April 1971 Allied obtained a bond in the penal sum of $890,000 on tract 24862 from the American Insurance Company (American), and on 26 August 1971 a

---

[1]Repealed effective 1 March 1975, now Government Code sections 66499, 66499.2.

bond in the penal sum of $142,000 on tract 24981 from the Stuyvesant Insurance Company (Stuyvesant).

The city permit for which the surety bonds were issued was for construction only (streets, sewers, sewer drains) and did not include major grading on the tracts. Both bonds provided for payment of reasonable attorneys fees if suit were brought to enforce the surety obligations.

On 14 May 1971 Sukut and Allied contracted for Sukut to do all major grading on the project.[2] A subsequent construction contract dated 15 February 1972 and amended July 15 and August 25 required Sukut to construct streets, storm drains, and walls for tracts 24862 and 24981. Periodically, Sukut submitted invoices to Allied for work done under the construction contract until completion of the contract on 22 November 1972. No party contests the adequacy, propriety, and necessity of the work performed by Sukut or the reasonableness of the amounts invoiced to Allied.

After its execution of the grading and construction contract, Allied obtained a construction loan from Cabot, Cabot & Forbes (CC&F), which received a first trust deed on tracts 24862 and 24981 as security for repayment. At some unknown time after Sukut began construction Allied defaulted on its loan obligation, and CC&F became owner of record through a nonjudicial foreclosure on the trust deed. Prior to that time, however, Sukut on 30 November 1972 and 4 January 1973, on the basis of unpaid invoices, recorded mechanics liens on the tracts in sums of $164,139 and $41,843, respectively.

Sukut filed an action seeking recovery of sums due under the construction contract and foreclosure of its mechanics liens (LASC No. C 48543), and thereafter in another action sought recovery against the sureties on their bonds for all grading and construction performed on tracts 24862 and 24981 (LASC No. 115404). CC&F then filed a declaratory relief action seeking a determination that the surety bonds, not the mechanics liens, were Sukut's primary source of recovery (LASC No. 133596). These three actions were consolidated for trial.

---

[2] Prior to trial of these three actions Sukut obtained a judgment on the grading contract in a separate action against Allied for $613,994, interest, costs, and attorneys fees of $40,000 (LASC No. 46119).

After presentation of evidence by Sukut the trial court, sitting as the trier of fact, held Allied liable to Sukut for $227,810 under the construction contract; ordered foreclosure on plaintiff's mechanics liens to the extent of the lien sum of $205,982, plus prejudgment interest; held the bonding companies liable (solely on their bonded construction contracts) for any deficiency, after foreclosure, on the lien sums; and awarded attorneys fees of $57,210 to Sukut against Allied and the bonding companies. The sureties' liability for attorneys fees was made proportionate to the respective penal sums of their bonds—American to pay $49,338 and Stuyvesant $7,871. Stuyvesant and Sukut cross-appeal[3] the judgment, all other parties having settled with Sukut.

1. *Remedies.* The main issue on appeal is whether the trial court erred when it ordered foreclosure on the mechanics liens prior to any recovery on the surety bonds. On the facts presented we think Sukut was entitled to judgment against one or both sets of defendants and entitled to pursue on execution whichever set of defendants best served its interests. In brief, priority of judgment and execution among defendants was a matter for election by Sukut and not for judicial determination.

The surety bonds of American and Stuyvesant were issued under the requirement of the then Business and Professions Code section 11612, and both by their language and that of the statute they inured to the benefit of contractors or subcontractors providing materials or performing labor on the project.[4] In addition to protection of the municipality from

[3]On appeal Stuyvesant argues that the judgment against it under its bond was excessive; that attorneys fees were improperly awarded under the bond; that the court improperly awarded prejudgment interests on amounts due under the bond. A rational determination of these contentions requires a complete review of the scope of Stuyvesant's liability in these multi-party proceedings. Stuyvesant in its opening brief fully discusses and argues the issue of priority of remedies, determined in its favor by the trial court. When issues on appeal necessarily intertwine with other basic issues before the trial court, the appellate court is empowered to do what justice requires to dispose of the cause. (*Estate of McDill* (1975) 14 Cal.3d 831, 840 [122 Cal.Rptr. 754, 537 P.2d 874], summarizing cases.) Since Sukut in its responding brief took vigorous exception to Stuyvesant's argument on the priority issue, we deem Sukut's posture to be one of cross-appeal on that issue. (Code Civ. Proc., § 906.)

[4]Prior cases under Business and Professions Code section 11612 held that a surety bond issued pursuant to its provisions was solely designed to secure faithful performance to the city. (*Weber* v. *Pacific Indemnity Co.* (1962) 204 Cal.App.2d 334, 336 [22 Cal.Rptr. 366]—citing cases.) However, in 1961 the Legislature amended section 11612 to allow a municipality to require a labor and materials bond for public improvement projects, and in 1963 the Legislature again amended section 11612 to require a labor and materials bond for the purpose of ". . . securing payment to the contractor, his subcontractors and to persons renting equipment or furnishing labor or materials to them for the improvement." (Stats. 1963, ch. 340, § 2, p. 1131.) The 1963 statute, with minor amendment, was in effect in 1971 when the bonds were issued.

liability for a defaulting subdivider, the purpose of the surety bond is to provide a distinct remedy to public works contractors, since: (1) the mechanics lien laws, in general, do not apply to public improvements (Civ. Code, § 3109 et seq.); and (2) the stop-notice remedy (Civ. Code, § 3179 et seq.) is ineffective where the public improvement is not governmentally funded. To this extent Business and Professions Code section 11612 parallels the function and purpose of Civil Code sections 3247 to 3251, which establish public works bonding requirements for general contractors. In the latter instance, the surety's labor and materials bond (payment bond) has uniformly been held to constitute a primary and direct obligation of the surety to the subcontractors and materialmen without reference to the liability of the public works contractor—the principal on the bond. (*Pacific Employers Ins. Co. v. State of California* (1970) 3 Cal.3d 573, 576 [91 Cal.Rptr. 273, 477 P.2d 129]; *California Elec. Supply Co. v. United Pac. Life Ins. Co.* (1964) 227 Cal.App.2d 138, 149 [38 Cal.Rptr. 479]; *Bonded Prod. Co. v. R. C. Gallyon Constr. Co., Inc.* (1964) 228 Cal.App.2d 186, 190-191 [39 Cal.Rptr. 347]; *Lewis & Queen v. S. Edmondson & Sons* (1952) 113 Cal.App.2d 705, 707 [248 P.2d 973]; *Pneucrete Corp. v. U. S. Fid. & G. Co.* (1935) 7 Cal.App.2d 733, 738 [46 P.2d 1000].) The liability of a surety on a Business and Professions Code section 11612 labor and materials bond should be no less direct and absolute. This comports with the general provision of Civil Code section 2807 and cases decided thereunder, which hold a surety liable immediately upon default of its principal.

Even though engaged in a public works project, Sukut possessed a second remedy by virtue of Civil Code sections 3112 and 3102, which allow mechanics liens on property adjacent to and benefited by public works (such as streets, curbs, etc.). To this end Sukut filed mechanics liens totalling $205,982 on tracts 24862 and 24981.

██ In support of the trial court's decision requiring prior foreclosure, Stuyvesant argues a contractor should be required to pursue foreclosure of a mechanics lien prior to recovery on a bond. This is an overly broad view of the law and one that is incorrect in this case. To be sure, Civil Code section 2849 provides that a surety is entitled to the benefit of every security held or acquired by a creditor to secure the principal's obligation, and Civil Code section 2845 allows a surety to require a creditor to proceed against the principal or pursue other remedies not available to the surety. However, the fact that Stuyvesant is

entitled to the "benefit" of Sukut's security (the mechanics liens) and to become subrogated to their benefits on its payment of the underlying obligation does not ipso facto require Sukut to pursue foreclosure of the mechanics liens as its primary remedy. (Cf. Rest., Security, § 131, p. 355.) To so hold would emasculate the clear requirement under Civil Code section 2845 that a surety make formal demand upon its principal's creditor to pursue alternate remedies. (*Glickman* v. *Collins* (1975) 13 Cal.3d 852, 862 [120 Cal.Rptr. 76, 533 P.2d 204]; *United California Bank* v. *Maltzman* (1974) 44 Cal.App.3d 41, 54 [118 Cal.Rptr. 299]; *Garrett* v. *Bomash* (1935) 10 Cal.App.2d 288, 291 [51 P.2d 1100].) This is no mere formality, for implicit in such a demand is recognition by the surety of its obligation under the bond and, in effect, its admission of liability to the creditor. Here, there was no such demand, and in fact Stuyvesant and American consistently denied *any* liability to Sukut under the bonds. Stuyvesant elected to resist the claim, and denied liability at trial. Having made such an election, Stuyvesant may not come in on judgment day and require Sukut to satisfy its judgment against other sources first, for at that point Sukut may choose whichever defendant or cause of action it wishes to pursue to satisfy its judgment.

We hold therefore that Stuyvesant and American were directly liable to Sukut and, in the absence of prior demand to pursue other remedies, Sukut was entitled to satisfy its judgment in full against the sureties for the labor and materials they had specifically bonded.

2. *Attorneys fees.* Stuyvesant asserts error in the trial court's award of attorneys fees to Sukut. Even though the plain language of its bond provides the surety will pay a reasonable attorneys fee if suit is brought on the bond, Stuyvesant claims any provision in a statutory bond not specifically required by the statute is mere surplusage and must be disregarded. (*Powers Regulator Co.* v. *Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 348-350 [22 Cal.Rptr. 373]; *Miles* v. *Baley* (1915) 170 Cal. 151, 158 [149 P. 45]; *Bridges* v. *Price* (1928) 95 Cal.App. 394 [273 P. 72].) These cases are not controlling, for here we are not confronted by bond language purporting to bind parties (*Powers*) or set conditions precedent to liability not required by statute (*Miles, Bridges*). Rather, the surety agreement to pay attorneys fees was a matter of special damages which did not pertain to questions of general liability. (4 Witkin, Cal. Procedure (2d ed.) Judgment, §§ 118-119, pp. 3269-3271.) As such, there is nothing in the statutory language of Business and Professions Code section 11612 to militate against such recovery.

■ Stuyvesant further argues the amount of attorneys fees awarded was excessive and improperly calculated. An award of attorneys fees is a matter within the sound discretion of the trial court, and, absent a patent abuse of discretion, the trial court's determination will not be reversed or modified. (*Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 688-690 [76 Cal.Rptr. 7].) The trial court awarded plaintiff Sukut $57,210 as attorneys fees—the difference between the total fees of the attorneys incurred in prosecution of all actions ($97,210), less the $40,000 allowed for attorneys fees in the prior, unrelated case. Due to the length, complexity, and magnitude of the case we perceive no abuse of discretion in the award.

■ Stuyvesant belatedly asserts that *it* is entitled to attorneys fees, since Sukut did not recover the entire amount prayed for in the complaint. This argument is without merit. The sureties are not prevailing parties within the meaning of Civil Code section 1717 merely because plaintiff's recovery did not correspond to its wildest dreams. The ultimate outcome that the sureties were in fact liable for labor and materials under their bonds and suffered final judgment to that effect precludes serious consideration of this claim.

3. *Prejudgment Interest.* Stuyvesant asserts that its good faith dispute regarding liability on its bond rendered the amount due under the construction contract "incapable of ascertainment," thereby precluding prejudgment interest under Civil Code section 3287. ■ Where there is no dispute over the basis for computation of damages, the fact that one party denies liability does not make the damages unascertainable within the meaning of Civil Code section 3287. (*Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1060-1061 [98 Cal.Rptr. 153]—summarizing cases). Stuyvesant's contrary assertion has no merit.

■ 4. *Excessive Judgment.* Stuyvesant asserts the judgment against it for work done on tract 24981 was excessive by $8,875—the amount of four invoices billed but unpaid under the grading contract for grading done on tract 24981. However, evidence was presented, and the trial court impliedly found in its award, that the grading work billed in these invoices was not the major or "rough" grading required under the grading contract, which was not bonded by Stuyvesant, but rather was for "fine" grading integral to the construction of the streets, storm drains, and walls. As part of the work necessary under the construction contract it was properly included in the judgment even though originally billed to another contract.

5. *Disposition.* The sureties are directly liable to Sukut for unpaid construction costs on tract 24981 (Stuyvesant) and tract 24862 (American). The trial court erred when it held the sureties liable on their bonds solely for any deficiencies after foreclosure of mechanics liens, because in this instance foreclosure is merely an alternate remedy or source of recovery available to Sukut. Accordingly, we reverse that portion of the judgment limiting recovery against the sureties to any lien deficiencies, and remand the consolidated cases to the trial court with instructions to: (1) enter judgment against Stuyvesant for $40,473.85, plus interest, as the unpaid balance for construction work done on tract 24981; (2) enter judgment against American for $187,336.55, plus interest, as the unpaid balance for construction work done on tract 24862;[5] (3) specifically provide in its judgment that the remedies available to Sukut against the sureties are separate and cumulative, and not dependent on any other remedies Sukut may have. In all other respects the judgment is affirmed. Costs on appeal and cross-appeal to Sukut.

Roth, P. J., and Beach, J., concurred.

The petition of appellant Stuyvesant Insurance Company for a hearing by the Supreme Court was denied December 13, 1978.

---

[5] We were advised by counsel for Stuyvesant that CC&F and Allied had settled with Sukut, and by order of this court dated 20 June 1978 we dismissed their appeals. On remand the liability of both American and Stuyvesant will depend on the extent, if any, to which Sukut has obtained satisfaction of judgment for unpaid work on tracts 24862 and 24981. Further, in the light of the sureties' failure to demand that Sukut pursue its foreclosure remedies, the principles of estoppel militate against any claim by the sureties that their subrogation rights had been impaired by Sukut's settlement of claims and release of security.

We have been advised at oral argument by counsel for American that American has settled with all other parties. If this advice is correct, the provisions of our judgment relating to American will become moot.