Filed 11/19/20  Wash v. Banda-Wash CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN WASH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARIA S. BANDA-WASH,<br><br>    Defendant and Respondent. | F075724<br><br>(Super. Ct. No. 17CECG00648)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from an order of the Superior Court of Fresno County.  James Petrucelli, Judge.

John Wash, in pro. per., for Plaintiff and Appellant.

Law Office of Daniel L. Harralson and Daniel L. Harralson for Defendant and Respondent.

-ooOoo-

Plaintiff John Wash (John) appeals from an order denying his request for a civil harassment restraining order against defendant Maria S. Banda-Wash (Maria) under Code

---

[*]    Before Franson, Acting P.J., Smith, J. and DeSantos, J.

of Civil Procedure section 527.6.[1]  At the beginning of the hearing, the trial court stated it had read John's papers and believed they were true.  Near the end of the hearing, after taking testimony from the parties, the court stated, "I don't see that you proved any reason for me to grant a restraining order."

We interpret the settled statement of the hearing on the restraining order to mean the trial court changed its view of the factual assertions in John's declaration by the end of the hearing and no longer considered those assertions to be completely accurate.  Consequently, for many issues, the trial court's failure of proof determination is reviewed under the finding-compelled-as-a-matter-of-law standard rather than the substantial evidence standard.

As explained below, the evidence presented did not, as a matter of law, compel the trial court to find John had established all of the elements necessary to obtain a restraining order under section 527.6.

We therefore affirm the order denying the request for a restraining order.

## FACTS AND PROCEEDINGS

*The Parties*

John and Thomas Wash are the sons of Robert Wash, who died in September 2005.  The sons inherited approximately 100 acres of agricultural land located at 3535 and 3473 South Temperance Avenue, Fresno, which is described as the family farm and the childhood home of John and Thomas.

Thomas Wash was married to Maria and they had two sons.  After Thomas died in November 2011, Maria became a co-owner of the 100 acres with John.  John and Maria live and work on the property.  John's residence is located on the north side of the driveway that serves both residences.  Besides the residences, the property contains

---

[1]    All further statutory references are to the Code of Civil Procedure.  All references to section 527.6 are to the version of the statute in effect at the time plaintiff's application for a harassment injunction was adjudicated.

approximately 77 acres of citrus orchards and a few acres used for a palm nursery business operated by Maria.

*Other Litigation*

Since 2009, John and Maria have been engaged in litigation relating to the property, an additional 40 acres of agricultural land, and their behavior towards one another. The litigation includes at least 11 lawsuits, one of which was filed by Thomas and Maria prior to Thomas's death. Those lawsuits were brought in Fresno County Superior Court and assigned case Nos. **09CECG00933**, 12CEFL06629, 13CECG00057, 13CECG00774, 13CECG03732, **13CECG03846**, 14CECG01236, **15CECG00967**, 15CECG01407, **16CECG01668** and **17CECG00648**. The five bolded case Nos. have generated 12 appeals and eight writ petitions in this court.[2]

Case Nos. 13CECG03846, 16CECG01668 and 17CECG00648 are among those initiated to obtain a restraining order. These three cases have generated seven matters before this court, including the present appeal from the denial of John's 2017 request for a civil harassment restraining order. So far, the appeals involving restraining order requests have produced three opinions. (See *Maria Banda v. John Wash* (Feb. 3, 2016, F069417) [nonpub. opn. affirming restraining order enjoining John from harassing Maria and her sons]; *John Wash v. Maria S. Banda-Wash* (Oct. 10, 2018, F074606) [nonpub. opn. affirming order denying John's petition under § 527.8 for restraining order to protect his employees]; *Maria Banda v. John Wash* (Feb. 19, 2020, F076666) [nonpub. opn. vacating order renewing Maria's restraining order and directing entry of nunc pro tunc order continuing hearing of renewal request until December 13, 2017].)

---

**2**     For example, case No. 09CECG00933 has generated one writ petition and four appeals. John's writ petition was denied (case No. F070440), he voluntarily dismissed one appeal (case No. F070262), and another appeal was resolved by an unpublished opinion (*Maria Wash v. John Wash* (Sept. 12, 2017, F071135) [affirming judgment entered pursuant to settlement agreement]). John's appeals from an order awarding attorney fees (case No. F077486) and a partition order (case No. F080399) are pending.

The December 13, 2017, hearing resulted in an order renewing Maria's restraining order against John. He appealed, the matter was assigned case No. F076986, and oral argument in case No. F076986 was heard by this court immediately after oral argument in the present appeal.

*Pleadings*

On March 1, 2017, John filed a request for civil harassment restraining order against Maria on mandatory Judicial Council form CH-100.[3] The request sought personal conduct orders and stay-away orders to protect John, his wife and his sister-in-law, Peggy Reimer.

On March 2, 2017, the superior court issued a temporary restraining order protecting John and members of his household. The temporary restraining order scheduled a hearing for March 20, 2017.

On March 20, 2017, at 3:17 p.m., Maria electronically filed a Judicial Council form CH-120, "Response to Request for Civil Harassment Restraining Orders." (Boldface omitted.) The corresponding Judicial Council form CH-250, "Proof of Service of Response by Mail," (boldface omitted) states Maria's response was placed in the mail on March 20, 2017. Maria's response stated she did not agree to the orders requested and she did not do anything described in item 7 of John's form CH-100. Item 10 of form CH-120 was left blank—that is, Maria did not acknowledge she did some of the things John accused her of or set forth a justification or excuse for such behavior.

Maria's response was accompanied by a declaration from her son Martin Wash. Martin's declaration described instances in February and March 2017 when he observed,

---

[3] Maria's request to renew the restraining order against John was filed in February 2017.

4.

and sometimes photographed, John working in the orchard using a tractor. Martin's declaration was intended to counter John's assertions about a painful back injury.**4**

*Hearing*

On March 21, 2017, the trial court heard John's request for a restraining order. John represented himself at the hearing. Maria attended and was represented by an attorney.

The hearing was not reported by a court reporter and was not recorded on tape. Consequently, John elected to use a settled statement as the record of the oral proceedings in the superior court. (Cal. Rules of Court, rule 8.137(b).) That process was completed in January 2018 when the trial court entered an order certifying a revised settled statement "as a complete accounting of the statements presented at the March 21, 2017 hearing" and acknowledged the settled statement was to be used in lieu of a reporter's transcript in this appeal. The settled statement provides that on appeal John intends to use the certified version as "a complete narrative of all testimony."

After hearing from the parties, the trial court denied John's request for a civil harassment restraining order with prejudice, dissolved the temporary restraining order, and reserved Maria's request for attorney fees. The court stated: "I don't see that you proved any reason for me to grant a restraining order."

*Appeal*

John timely appealed from the March 21, 2017, order denying his request for a civil harassment restraining order. His notice of appeal asserted the order was appealable pursuant to section 904.1, subdivision (a)(6), which authorizes civil appeals from "an order … refusing to grant … an injunction."

---

**4** A document filed in case No. F076666 states that John subsequently had back surgery in July 2017.

## DISCUSSION

I. OVERVIEW OF CIVIL HARASSMENT INJUNCTIONS

Section 527.6, subdivision (a)(1) provides that a victim of "harassment … may seek a temporary restraining order and an order after hearing prohibiting harassment." "Section 527.6 is a specialized statute providing an expedited procedure for issuance of limited-scope and limited-duration injunctions in instances of 'harassment.' " (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 807 (*Byers*).) The statute defines "[h]arassment" as follows:

> "[U]nlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

The three types of behavior listed in the definition of harassment also have statutory definitions. First, "[u]nlawful violence" refers to "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but does not include lawful acts of self-defense or defense of others." (§ 527.6, subd. (b)(7).) Second, a "threat of violence" may be communicated in a statement or by a course of conduct and is "[c]redible" if it "would place a reasonable person in fear for his or her safety or the safety of his or her immediate family" and if it serves no legitimate purpose. (§ 527.6, subd. (b)(2).) Third, "[c]ourse of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).) The definition also provides a nonexclusive list of examples of a course of conduct, "including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means." (*Ibid.*)

6.

A party may seek a temporary order, an order after hearing (which may remain in effect for up to five years), or both.  (§ 527.6, subds. (d), (g), (j)(1).)[5]  To promote the flow of litigation for the parties and the courts and to assist law enforcement officers who may be called upon to address an alleged violation of the order, the Legislature directed the Judicial Council to "develop forms, instructions, and rules relating to matters governed by this section.  The petition and response forms shall be simple and concise, and their use by the parties in actions brought pursuant to this section is mandatory."  (§ 527.6, subd. (x)(1).)  Consequently, a party seeking an order under section 527.6 must use Judicial Council form CH-100, "Request for Civil Harassment Restraining Orders."  (Boldface omitted.)  (See Cal. Rules of Court, rule 1.31(a) [use of mandatory forms].)

The party responding to the petition "may file a response that explains, excuses, justifies, or denies the alleged harassment or may file a cross-petition under this section."  (§ 527.6, subd. (h).)  The responding party must use mandatory Judicial Council form CH-120, "Response to Request for Civil Harassment Restraining Orders."  (Boldface omitted.)

A responding party is "entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition."  (§ 527.6, subd. (*o*).)  Either party may request and obtain a continuance of the hearing upon a showing of good cause.  (§ 527.6, subd. (p)(1).)  The statute establishes deadlines for holding a hearing on the petition, which are affected by whether a temporary restraining order was granted.  (§ 527.6, subds. (f), (g).)

"At the hearing, the judge *shall receive any testimony* that is relevant, and may make an independent inquiry.  If the judge finds by clear and convincing evidence that

---

5      A temporary restraining order must be issued using Judicial Council form CH-110, "Temporary Restraining Order."  (Boldface omitted.)  A court must use Judicial Council form CH-130, "Civil Harassment Restraining Order After Hearing" (boldface omitted) to set forth the terms of the longer lasting order.

7.

unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i), italics added.) An injunction prohibiting "future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 (*Harris*).)

## II. DISPUTES ABOUT THE EVIDENCE AND FINDINGS

### A. Standard of Review

The arguments raised by the parties refer to three different standards of appellate review—substantial evidence, de novo, and the finding-compelled-as-a-matter-of-law standard. Generally, when an appellate court reviews a superior court's decision on a request for civil harassment restraining order, it determines whether the express and implied findings of fact are supported by substantial evidence in the record. (*Harris*, *supra*, 248 Cal.App.4th at p. 497.)

In comparison, questions of law, such as issues of statutory construction, are subject to de novo (i.e., independent) review by appellate courts. (*Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 224.) Also, " 'whether the facts, when construed most favorably in [the prevailing party's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.' " (*Harris*, *supra,* 248 Cal.App.4th at p. 497; see *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)

A third standard of review may apply when a superior court *denies* the petition for a civil harassment restraining order and frames its determination by stating the plaintiff did not carry his or her burden of proof. Within the past 10 years, the Fifth District has published three opinions addressing the standard of review applicable to a trial court's failure-of-proof determination.

> " 'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as

8.

whether substantial evidence supports the judgment.... [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's*); see *Wells Fargo Bank, N.A. v. 6354 Figarden General Partnership* (2015) 238 Cal.App.4th 370, 390; *Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 965.)

In this appeal, Maria contends the finding-compelled-as-a-matter-of-law standard of review set forth in *Dreyer's* applies and John's evidence falls short of compelling a finding in his favor. We note the parties are familiar with this standard because it was discussed and applied in one of John's earlier appeals. (See *John Wash v. Maria S. Banda-Wash* (Oct. 10, 2018, F074606) [nonpub. opn. affirming order denying John's petition under § 527.8 for restraining order to protect his employees].) Below, we will select the applicable standard of review after identifying the particular aspect of the trial court's ruling under review. (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)

### B.      Existence of Sworn Testimony

#### *1.      Parties' Contentions*

A fundamental dispute about the evidence presented at the hearing arises from Maria's assertion that "each party only gave 'statements,' not 'testimony' at the March 21, 2017 hearing." Maria also asserts, "There is no record that the parties were sworn under oath prior to providing their statements." In particular, the settled statement and the law and motion minute order from the hearing make no reference to the parties being sworn.

John contends sworn testimony was presented. His interpretation of the settled statement differs from Maria's. John refers to the sentence stating he intended to use it

9.

"as a complete narrative of all *testimony*." (Italics added.) The settled statement contains a section labeled "Narrative Statement" and describes it as showing, among other things, "the only *testimony* of defendant Maria." (Italics added.) The narrative statement's second numbered paragraph provides: "Appearing *as witnesses* were plaintiff John Wash on his own behalf, and defendant Maria S. Banda-Wash." (Italics added.)

### 2. *Construing the Settled Statement*

Here, we consider the rules that govern our interpretation of the settled statement. The parties have cited no case or other authority setting forth the rules for interpreting a settled statement. In comparison, it is well established that when an appellate court must determine the meaning of an order or judgment, it applies the same rules used in ascertaining the meaning of any other writing. (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724.) We conclude these same rules usually apply to determining the meaning of the settled statement. We qualify this statement with the term "usually," because sometimes an ambiguity or omission will be resolved by applying a specific principle of appellate review. For instance, if a settled statement is vague because it does not state whether a procedure required by law was followed or omitted, the question might be resolved by applying the presumption that the trial court followed the law. (See *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563 ["it is presumed that the court followed the law"].)

In addition, we conclude the interpretation of a settled statement, like the interpretation of a judgment or order, presents a question of law and, thus, is subject to our independent evaluation. (*Mendly v. County of Los Angeles*, *supra*, 23 Cal.App.4th at p. 1205.) The process of interpretation includes the specific question of whether an ambiguity exists. Accordingly, whether language in a settled statement is ambiguous also presents a question of law. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165

[contractual ambiguity].)  If a settled statement contains an ambiguity, we determine the meaning of the ambiguous language after considering the settled statement as a whole and examining the entire record to place the settled statement in context.  (See *Estate of Careaga* (1964) 61 Cal.2d 471, 475–476.)

### 3.    *Analysis of the Settled Statement*

Our initial inquiry addresses whether the settled statement is ambiguous—that is, reasonably susceptible to more than one interpretation—as to whether John and Maria presented testimony at the hearing.  We conclude the second numbered paragraph in the "Narrative Statement" section of the settled statement is not ambiguous.  It reads: "Appearing *as witnesses* were plaintiff John Wash on his own behalf, and defendant Maria S. Banda-Wash."  (Italics added.)  The definition of "witness" includes: "1.  One who sees, knows, or vouches for something <a witness to a testator's signature>.  2.  One who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit."  (Black's Law Dict. (8th ed. 2004) p. 1633.)  When the use of the plural "witnesses" is considered in context—the purpose of the settled statement is to describe what occurred at the hearing—it plainly means that John and Maria both presented sworn testimony at the hearing.

This interpretation of the settled statement is consistent with the requirements of subdivision (i) of section 527.6, which states:  "At the hearing, the judge *shall receive any testimony* that is relevant, and may make an independent inquiry."  The statements made by John and Maria at the hearing were relevant to the existence of harassment and its impact on John, if any.  Thus, the trial court was compelled by the mandatory language of the statute to receive the testimony.  A failure to do so would have violated the statute.  (See *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 729 [trial court erred by refusing to hear live testimony in a proceeding for a civil harassment injunction].)

11.

In summary, we agree with John's argument that the parties presented testimony at the hearing and reject Maria's argument that they gave only statements, not testimony. Consequently, we need not reverse and remand with directions for the trial court to receive testimony from the parties. (See § 527.6, subd. (i) ["judge shall receive any testimony that is relevant"].)

C.  Findings of Historical Fact

1.  *Parties' Contentions*

A significant question in this appeal involves the parties' dispute about the trial court's findings of historical fact—that is, who did what, where, when, how and why.[6] Maria interprets the settled statement to mean that "the trial court found no credibility as to the evidence presented by [John] in support of his [restraining order] request."

In contrast, John relies on the trial court's statement that " 'I read your papers. I believe the[y're] true.' " In addition, as a preamble to the statements of what occurred in open court, the settled statement provides: "The arguments on appeal will include that the Narrative Statement shows that 1) [the trial court] read [John's] papers (petition and declaration) and considered the allegations as true .…" Under John's interpretation of the settled statement, the trial court found all of the factual assertions in his declaration to be a true and correct account of historical fact.

---

[6]  Findings of "historical" or "basic" facts address "questions of who did what, when or where, how or why." (*U.S. Bank National Assn. ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC* (2018) ___ U.S. ___, 138 S.Ct. 960, 966.) Such findings can be distinguished from determinations of "ultimate facts," which are conclusions reached by applying legal principles to the underlying facts. (See generally, *Dino, Inc. v. Boreta Enterprises, Inc.* (1964) 226 Cal.App.2d 336, 340.) For example, that an act was "negligently" done is regarded as an ultimate fact rather than a historical fact. (*Rannard v. Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149, 155; see *Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095 ["negligence is ordinarily a question of fact"].)

12.

## 2. *Ambiguity*

Here we consider whether the settled statement is ambiguous about the trial court's findings as to historical fact. The court did not set forth specific findings of fact. Instead, the settled statement contains two general statements. Near the beginning of the hearing, the court stated to John, "I read your papers. I believe the[y're] true." At the end of the hearing, after hearing the parties' testimony, the court stated, "I don't see that you proved any reason for me to grant a restraining order. I'm going to deny with prejudice."

One reasonable interpretation of the trial court's statements is that it continued to believe the description of events in John's declaration were true but concluded those facts were insufficient to establish the statutory grounds for issuing a restraining order. Another reasonable interpretation is that the court changed its mind after hearing the parties' testimony and, as a result, no longer believed everything stated in John's declaration was true. Based on these two reasonable interpretations of the settled statement, we conclude it is ambiguous.

## 3. *Resolving the Ambiguity*

Our next step is to resolve the ambiguity and determine what the trial court meant when it stated John had not proven any reason for granting the restraining order. To resolve this question, we adopt the interpretation that is the most probable. Based on our reading of the entire settled statement and considering the procedural context in which the court's statements were made, we conclude the trial court changed its view of John's declaration after it heard and considered the testimony presented.

During his testimony, John stated: "I would like to put this picture as evidence of her aggressiveness when she came at me and hit me with the wrench." The trial court looked at the picture and said, "That wrench is a tiny little wrench on a key chain." John responded, "It is still an assault." This exchange demonstrates the court was not impressed with the evidence of Maria's violence towards John and supports the inference

13.

that her use of the wrench would not "*seriously* alarm[], annoy[], or harass[] the person" against whom it was directed. (§ 527.6, subd. (b)(3), italics added.) In addition to seeing the size of the wrench, the trial court also would have seen John, who is listed as six feet tall and 280 pounds in the restraining order Maria obtained against him.

The foregoing is one example of testimony that could have changed the trial court's view of the assertions made in John's request form and declaration. On balance, we interpret the settled statement to mean the court had changed its view of the factual assertions in John's declaration by the end of the hearing and no longer considered those assertions to be completely accurate.

### 4. Consequences

The consequences that flow from our interpretation of the settled statement have a significant effect on the outcome of this appeal. Specifically, John cannot rely on the allegations of historical fact set forth in his declaration to be taken as true for purposes of this appeal. Instead, his version of the facts will be scrutinized to determine " 'whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Dreyer's*, *supra*, 218 Cal.App.4th at p. 838.) A finding is compelled as a matter of law when the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. (*Ibid.*)

## III. HARASSMENT

### A. Photographs and Filming

John contends Maria's use of cameras to photograph him, family members and an employee constitutes harassment for purposes of section 527.6. Some of the cameras are remote or wildlife cameras. Other cameras take video or photographs and are used by Maria to record images of John, his sister-in-law or his worker.

During the hearing, the trial court asked Maria if she had cameras on the property. Her attorney answered, "Yes, I advised Maria to put cameras out." The court asked, "Are they wildlife cameras?" The attorney confirmed they were. The attorney stated that John was feigning an injury and they had pictures showing him working on his tractor. This reference to pictures of John working on a tractor appears to relate to photographs taken by Maria's son, Martin, on three separate days in February and March 2017. These photographs are described in Martin's declaration. The statements of Maria's attorney and the declaration of her son constitute judicial admissions of John's factual allegations that Maria, either directly or indirectly, was taking pictures of him. (See *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 451–452 [judicial admissions and their conclusive effect].)

The trial court responded to the attorney's admissions about the cameras by stating Maria could take pictures of John "as a right o[r] privilege." Pursuant to the rules governing appellate review, we conclude the trial court impliedly found Maria's use of cameras served a legitimate purpose. (§ 527.6, subd. (b)(3) [harassment is specified conduct "that serves no legitimate purpose"].) This implied finding explains why the court did not enjoin Maria's admitted use of cameras to record images of John.

On the question of whether Maria was required to prove a legitimate purpose or whether John was required to prove the absence of a legitimate purpose, we assume for purposes of this appeal that the existence of a legitimate purpose was an element Maria was required to prove. Accordingly, we review the implied finding of a legitimate purpose under the substantial evidence standard rather than the finding-compelled-as-a-matter-of-law standard. We conclude the record contains substantial evidence supporting the implied finding of a legitimate purpose. First, Maria had a restraining order against John and the videos and photographs were a way to document failures to comply with the restraining order and to deter noncompliance. Second, Maria and John were involved in ongoing litigation in Fresno County Superior Court case No. 15CECG00967 and the

video and photographs may have been relevant to the issues raised in that case. Accordingly, the trial court had a sufficient evidentiary basis for finding Maria's use of cameras served a "legitimate purpose" as that phrase is used in section 527.6, subdivision (b)(3).

We recognize repeated picture taking can constitute a course of conduct that seriously annoys the person at whom it is directed. For instance, the court in *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131 listed the defendant's use of cameras as part of the evidence of behavior supporting the finding of harassment under the Elder Abuse Act (Welf. and Inst. Code, § 15600 et seq.). (*Bookout v. Nielsen*, *supra*, at p. 1141.) The court's determination that harassment existed in that case does not create a principle of law that taking pictures can never have a legitimate purpose. Thus, *Bookout* did not preclude the trial court from finding Maria had a legitimate purpose for photographing John and others on the property.

### B. Fast Driving

John contends Maria's reckless driving on the driveway constituted harassment. His declaration described incidents that occurred on the 11th, 14th, 18th and 25th of February 2017.

On February 11, 2017, while John was using the shared driveway, he asserts he "saw Maria racing down the driveway at me, and at a high rate of speed." John turned north on Temperance Avenue and stopped at his mailbox. He alleges that Maria stopped at the end of the driveway, used foul hand gestures while he retrieved his mail, and then turned south on Temperance Avenue.

On February 14, 2017, John asserts that while he was on the driveway "Maria came flying at me in her new truck at a high rate of speed and in a reckless manner." He asserts she again parked and watched him get his mail. John stated he became alarmed that Maria might try to hit him with her truck or shoot him while he was stationary,

getting his mail.  During the hearing, the trial court asked Maria about what happened on February 14, 2017.  Maria stated, "I come down the driveway.  He complains if I go slow or fast.  I don't know what I suppose to do.  I was driving fast because I was late to pick up my son."  When asked if she stopped on the driveway, Maria answered, "Yes.  I was making a phone call so I stopped."

On February 18, 2017, John asserts that while he was in his yard, Maria came down the main driveway and stared at him, causing him to become emotionally distressed and fearful for his safety.  These allegations were not addressed at the hearing.

On February 25, 2017, John asserts that he was in his yard when Maria came down the main driveway and parked her car near Temperance Avenue within clear view of him.  John asserts he believed this was stalking and harassment and it made him fearful for his safety.  When the trial court asked Maria about that day, Maria stated:  "I come down the driveway.  I stopped because I was waiting for a customer."

We conclude the foregoing evidence did not compel the trial court to find Maria's driving and stopping on the driveway constituted harassment.  Maria admitted to driving fast on the driveway once.  She also admitted to stopping on the driveway twice, once to make a phone call and once to wait for a customer.  The trial court reasonably could find one instance of driving fast on the driveway did not constitute a "course of conduct" directed at John.  (§ 527.6, subd. (b)(3) [definition of harassment].)  "Course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."  (§ 527.6, subd. (b)(1).)  Similarly, the trial court could reasonably find that stopping twice on the driveway was not a course of conduct directed at John or that, in both instances, Maria had a legitimate purpose for stopping.  Consequently, we conclude the trial court was not compelled to find Maria's operation of her vehicle on the driveway constituted harassment.

17.

C.    Assault or Battery by Maria

John contends Maria "made bodily contact by striking him twice (once with a small wrench on her keychain, and striking him in the back)." On an unspecified date, John testified that Maria "came at me and hit me with the wrench" and presented the trial court with a picture of the wrench. Upon seeing the picture, the court described the wrench as " 'a tiny little wrench on a key chain.' " John's declaration described the other incident by asserting that he was in his mandarin orchard on November 7, 2015, and Maria approached him from behind, hit or karate chopped him in the back, and pushed him.

As stated earlier, the trial court was not persuaded by the evidence of Maria's violence towards John. The court's statement about what John had not proven supports the inference that the court found someone hit with the wrench would not "*seriously* alarm[], annoy[], or harass[] the person." (§ 527.6, subd. (b)(3), italics added.) Based on the evidence presented, we conclude the trial court was not compelled to find otherwise.

The evidence about Maria hitting John in the back also does not compel a finding, as a matter of law, that Maria harassed John. John's statements about being hit in the back were not directly contradicted or impeached. Therefore, we consider whether his evidence was " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) Ordinarily, a trier of fact is free to disbelieve an uncontradicted witness if there is any rational ground for doing so. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) Rational grounds for disbelieving a witness include the factors listed in Evidence Code section 780. These factors include the witness's interest in the matter. (Evid. Code, § 780, subd. (f); see *Pierce v. Wright* (1953) 117 Cal.App.2d 718, 723 [court is not bound to believe interested witness].) In light of the grounds stated in Evidence Code section 780, the trial court was not required to believe John's allegation about being hit in the back in November 2015. Thus, the court was not

compelled as a matter of law to find Maria committed unlawful violence that constituted harassment. (See *Dreyer's*, *supra*, 218 Cal.App.4th at p. 838.)

D.      Other Acts by Maria

The other allegations made by John about Maria's behavior constituting harassment suffer from the same problem as his allegation about being hit in the back. It is extremely difficult for an appellant to demonstrate the trial court was required to find his allegations of historical fact were true and was compelled to find those facts established harassment that should be enjoined pursuant to section 527.6. We conclude that John's appellate briefing has not made the required demonstration and, as a result, his claim about other acts by Maria do not provide grounds for reversing the denial of his request for a restraining order.

E.      Denial of Constitutional Rights

Section 1 of article I of the California Constitution states that all people have inalienable rights, including "enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." John contends the denial of injunctive relief violated these inalienable rights. To be entitled to a civil harassment restraining order, the person applying for the order must prove that unlawful harassment exists and "is likely to recur in the future." (*Harris*, *supra*, 248 Cal.App.4th at p. 496.) Having failed to carry his burden of proof under the statute, it follows that John also has failed to prove the denial of his request violated his constitutional rights.

**DISPOSITION**

The order denying the request for a civil harassment restraining order under section 527.6 is affirmed. Defendant shall recover her costs on appeal.

19.