Filed 5/7/21  Hall v. Davis CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GUY HALL,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>KEITH DAVIS,<br><br>        Defendant and Appellant. | F078302<br><br>(Super. Ct. No. 10794)<br><br>**OPINION** |

-ooOoo-

        APPEAL from an order of the Superior Court of Mariposa County.  Michael A. Fagalde, Judge.

        Law Office of James H. Watkins, James H. Watkins and James W. Lee for Defendant and Appellant.

        Jamison Chappel & Beaumont, Nanette M. Beaumont and J. Brent Richardson for Defendant and Respondent.

-ooOoo-

        This appeal involves a dispute between neighboring property owners and defendant's challenge to a civil harassment restraining order and a judgment enforcing

the parties' settlement agreement. (See Code Civ. Proc., §§ 526.7, 664.6.)[1] We conclude substantial evidence supports the trial court's findings that defendant displayed his middle finger at his neighbors and played music louder than 80 decibels at the property line. These findings are sufficient to establish that defendant violated the terms of the settlement agreement. Furthermore, these findings and the trial court's other express and implied findings provide an adequate basis for the court's determination that defendant engaged in a willful course of conduct directed at his neighbors that seriously annoyed and harassed them and caused them emotional distress. (§ 527.6, subd. (b)(3) [definition of harassment].) Therefore, the court properly issued a civil harassment restraining order against defendant. (§ 527.6, subd. (a)(1).)

We therefore affirm the judgment and the restraining order.

## FACTS AND PROCEEDINGS

In 2008, respondent Guy Hall and his wife purchased a 40-acre lot and residence on Leaning Pine Way in Mariposa County. The Hall property is adjacent to real property owned by defendant Keith Davis. Both properties are served by a common access road approximately a quarter mile long. The access road is located on land subject to an easement.[2] The Halls' house is on a bluff overlooking the access road. Davis has a gate where the access road enters his property. The gate is located across from and below the Halls' house. Based on the testimony presented, we infer there was a cul-de-sac or turning area in front of Davis's gate.

*2012-2016*

On February 16, 2012, the Halls returned home from the Bay Area and heard extremely loud music. The music could still be heard after they entered their house. Hall attempted to contact Davis, thinking that Davis did not realize they had returned home.

---

[1]     Unlabeled statutory references are to the Code of Civil Procedure.

[2]     The access road serves four properties, three of which contain residences.

2.

Hall tried yelling onto Davis's property and tried telephoning him, but got no response. Hall then went onto the Davis property to ask Davis to turn down his music. When Davis saw Hall, he told Hall to "get the fuck off this property." Hall thought Davis did not realize who he was. Hall told Davis he was Davis's neighbor from next door. Davis said, "I don't give a fuck. Get the fuck off my property." Hall testified that Davis appeared to have been drinking because Davis was slurring his speech, his gait was abnormal, and he had a drink of some sort in his hand. Hall gave a heated response and began to leave the property. Davis said, "You do that again, and you're gone." Hall stated that he was going to call the sheriff's department. Hall did, and the sheriff's department responded to the call.

On January 1, 2013, Davis was working on his property with a wheelbarrow and playing loud music. Hall went over and asked Davis to turn his music down. Again, they exchanged heated words and Davis told Hall he hoped Hall's children would get a disease and die a slow death. Mrs. Hall heard the remark, became upset and contacted the sheriff's department, which responded.

On April 18, 2013, Davis played loud music and Hall called the sheriff's department. The music stopped before the deputies arrived. Hall called them to say it had stopped and he would call again if it resumed.

On June 30, 2015, Hall asked Davis to stop flipping the bird towards Hall's house when Davis got out of his car to open or close his gate. The window in Hall's daughter's room overlooks the area where the gate is located. Davis ignored Hall and left.

On November 5, 2015, from 11 to around 2 o'clock, Davis played a Billy Idol song, "Eyes Without a Face," over and over. Hall did not confront Davis, but went inside and played music to cover the sound. Hall also wrote down a description of the event. Other incidents involving Davis' playing loud music, operating sirens, setting off loud horns, and flipping off Hall occurred in November 2015 and March, April and May 2016 and were catalogued by Hall.

On June 7, 2016, while Hall was getting his mail at the mailboxes and Davis drove his Corvette past Hall, coming with two or three feet of him and then fishtailing. Hall testified he "was pretty scared about the whole thing" and "[t]hat was it for me."

*The Lawsuit*

On June 20, 2016, Hall filed a request for civil harassment restraining orders against Davis. The court issued a temporary restraining order and set a hearing. On July 11, 2016, the evidentiary hearing started. Hall was represented by a lawyer and Davis represented himself. Hall was the only witness, testifying on direct and cross examination. Exhibits A through N, mostly photographs of Davis and two diagrams, were admitted in evidence. The hearing was scheduled to reconvene two days later.

On July 13, 2016, the lawyer Davis retained filed a substitution of attorney and the matter was continued to August 17, 2016. The continued hearing was never held because the parties reached a settlement. The five-page written settlement agreement stated it became effective as of August 17, 2016, and was signed by Davis, Hall, Mrs. Hall, and their respective counsel.

*Terms of Settlement*

Under the agreement, Davis agreed to stay 100 yards away from Hall, Mrs. Hall and their children and Hall agreed to stay 100 yards away from Davis, except when on their properties or on the access road. Davis agreed not to sound off sirens, horns or music loud enough to reach 80 decibels at the property line of Hall's property or 250 feet from his residence, whichever was greater. Davis also agreed "not to flip off (displaying his middle finger at)" Hall, Mrs. Hall or their children, and Hall agreed not to flip off Davis. Davis agreed "not to harass, disturb the peace, or make malicious comments to" Hall, his wife or his children, "including but not limited to shining a spotlight into the Hall residence." Hall agreed "not to harass, disturb the peace, or make malicious comments to" Davis. The settlement terms also addressed speeding on the access road,

4.

videotaping or photographing the yards of the other party, which included the gate to the Davis property.

The settlement agreement provided it was enforceable under section 664.6; a dismissal would be filed in the court action once the agreement was fully executed; the parties waived any confidentiality consistent with Evidence Code section 1123; and the prevailing party in any legal proceeding to enforce the agreement would be entitled to recover reasonable attorney fees and costs. The agreement required any modification to be in writing and included an integration clause, stating it contained the parties' entire agreement. The agreement stated each party cooperated in the drafting and preparation and, thus, the agreement would not be construed against any party.

In September 2016, Hall's attorney filed a request for dismissal. After the deputy clerk entered the dismissal, Hall's attorney filed a notice of entry of dismissal and proof of service.

*Motion to Enforce Settlement*

On April 17, 2018, Hall filed a motion to enforce the settlement agreement supported by declarations from Hall, Mrs. Hall, and their attorney. Mrs. Hall's declaration stated that (1) on the afternoon of March 8, 2018, Davis drove a tractor on the access road with a large poster board displaying the middle finger and attached a photograph of the vehicle and sign; (2) Davis mounted a large poster board sign of a middle finger on a trailer and positioned it to face the Halls' house; and (3) on June 23 and 24, 2017, September 12, 2017, and December 29, 2017, Davis displayed his middle finger at their house while opening or closing the gate. Hall's declaration included additional photographs of the tractor and poster board, a photograph from a neighbor's game camera showing Hall and his children walking on the access road, and a photograph of Hall taken 15 minutes later by the same camera and headed in the same direction. Hall's declaration described the photograph as showing Davis "with what appears to be a gun on his right hip and a knife on his left hip."

5.

Davis opposed the motion to enforce the settlement agreement. His supporting declaration stated: "I categorically deny having displayed my middle finger in the direction of [Hall's] house and/or family." It also stated Davis owned several cloth flags showing a hand displaying the middle finger, which he normally mounted on his tractor and trailer. The declaration stated the tractor and trailer moved around his property and could face any direction. It described the flags as "simply a humorous piece of art and not directed an any particular person or location." Davis addressed the music issue by stating he had been working that spring to clear brush and mow weeds and sometimes played music loud enough to hear over the tractor mower, but not loud enough to violate the settlement agreement. Davis asserted he had not created sound using sirens, horns or music loud enough to reach 80 decibels at the Halls' property line and argued Hall was trying to read additional, unexpressed terms into the settlement agreement.

*Hearing*

On June 11, 2018, the evidentiary hearing on the motion to enforce the settlement agreement began. Hall testified on direct and cross-examination. Hall also called Mark Avory, another person who lives on Leaning Pine Way, as a witness. Avory testified his residence was about a quarter of a mile from Davis's house and his 25-acre lot shares a 400-foot boundary with the Davis property.

Avory testified that around the middle of April 2018, he saw Davis sitting on a tractor parked near Avory's gate when he returned home. Avory drove onto his property and stopped so his wife could leave the vehicle and close the gate. Avory testified loud music was playing on Davis's property and he "could hear it very well, really blasting." Avory estimated the distance at a quarter of a mile. Davis approached Avory's wife and requested that Avory come to the gate to talk with him. At the time, Davis had a handgun holstered at his waist and a large hunting knife on the other side. Davis asked Avory to remove a motion-activated gaming and security camera on Avory's property that was directed at the access road.

6.

During his testimony, Avory authenticated two photographs the camera took of Davis on his tractor with the flag displayed. Avory also authenticated his camera's June 5, 2018 photograph of Davis showing his middle finger to the camera.

On June 13, 2018, the evidentiary hearing continued, and Mrs. Hall and Davis testified. As described below, Mrs. Hall testified to Davis playing loud music, displaying flags depicting a raised middle finger, and displaying his own middle finger while opening and closing his gate.

During direct examination, Davis was asked if he used his middle finger to open and close his gate. Davis stated he did not recall and then described the actions he takes to open and close his gate, which swings onto his property. Then Davis stated: "So I don't think — I don't recall ever using my middle finger or fingers. I just — I use my hand." Davis also testified he was not aware of Mrs. Hall watching him as he went in and out of his gate.

Davis testified that someone, thinking it funny after Davis signed the settlement agreement, gave him the first flag depicting a raised middle finger. Davis ordered three or four other flags, stating they suited his purpose of providing shade and protection.

Davis described his job as a front-line supervisor of telecommunication and electro-mechanical technicians for Bay Area Rapid Transit in Oakland. Davis testified he was familiar with decibel ratings from his work as a technician setting the level of the public address systems in BART stations. Davis stated he had a sound level meter and described how he used the meter on multiple occasions to test the sound level of music played on his stereo. Davis stated he turned his stereo to the maximum, lowered the sound to a level that was not distorting, and then walked away from the speakers. He stated the level dropped below 80 decibels when he was 35 feet down his driveway and was around 50 decibels when he reached the property line.

*Trial Court's Ruling*

Near the end of the hearing, counsel agreed to accept a ruling from the bench rather than a written decision. The ruling was scheduled for June 28, 2018. On that date, Hall's attorney was present but neither Davis nor his attorney appeared.

Before issuing its ruling, the trial court identified the evidence and papers it had considered, which included the original request for a restraining order filed in June 2016, the transcript and exhibits from the July 11, 2016 hearing, and the declarations and supplemental declarations submitted by the parties. The court found four ways in which Davis violated the settlement agreement provision stating he would not harass or disturb the peace of Hall, Mrs. Hall or their children. First, Davis played loud music in excess of 80 decibels. Second, Davis displayed his middle finger at the Hall residence numerous times while opening or closing his gate on the access road. Third, Davis attached a flag—approximately three feet by five feet—clearly depicting a raised middle finger to the rear of a utility trailer and positioned it to face the Hall residence. Fourth, Davis drove a tractor with a similar flag on the access road and it was visible from the Hall residence.

Based on these findings of fact, the court determined Davis harassed and disturbed the peace of the Halls in violation of the settlement agreement. The court also issued the civil harassment restraining order and set it to expire on June 27, 2019. The court determined Hall was the prevailing party for purposes of section 664.6 and ordered Davis to pay attorney fees in the amount of $9,079.50. The court also set a hearing in July to address whether Davis had presented proof of turning in his firearms.

On June 28, 2018, the court signed and filed (1) a civil harassment restraining order after hearing on mandatory Judicial Council form CH-130 and (2) a judgment addressing Hall's motion to enforce the settlement agreement, including his request for attorney fees. On July 5, 2018, the court filed a second amended civil harassment restraining order after hearing. In September 2018, Hall filed a notice of entry of

8.

judgment or order with a copy of the second amended civil harassment restraining order attached.  Davis filed a timely appeal.

## DISCUSSION

I.     FINDINGS OF FACT

Before considering the trial court's interpretation of section 527.6 and the settlement agreement and the application of those interpretations to the facts of this case, we address the trial court's express and implied findings of fact.

A.     Standard of Review

As a general rule, a trial court's findings of fact are subject to the substantial evidence standard of appellate review.  For purposes of this standard of review, evidence is "substantial" if it is of ponderable legal significance, reasonable in nature, credible, and of solid value.  (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935–936.)  As described below, the substantial evidence standard applies to factual findings made by the trial court in this procedural setting—that is, ruling on (1) a request for a restraining order under section 527.6 and (2) a motion to enforce a settlement agreement under section 664.6.

1.     *Restraining Orders*

"We review the trial court's decision to grant the restraining order for substantial evidence." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497 (*Harris*).)  " 'The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record.  [Citation.]  But whether the facts, when construed most favorably in [petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.' " (*Ibid.*; see *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 [existence or nonexistence of substantial evidence is a question of law].)

9.

When "assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in ... section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review. We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

### 2. Orders Enforcing a Settlement Agreement

A trial court's " 'factual findings on a motion to enforce a settlement pursuant to section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." ' " (*J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984; *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253 [findings of fact on a motion to enforce a settlement are reviewed under the substantial evidence standard].) "Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement." (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360 (*Osumi*).)

### 3. Credibility Findings

We separately address credibility findings because of their significance to the outcome of this appeal. Many appellate decisions state the reviewing court is " 'bound by the trial court's credibility determinations.' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.) This is a slight overstatement, but not much of one because expressed or implied credibility findings are given great deference and, as a result, are difficult to successfully challenge.

10.

First, if the trial court finds certain testimony of a witness is *credible*, an appellate court must accept that credibility finding unless the testimony is incredible on its face, inherently improbable or wholly unacceptable to reasonable minds. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786; see *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [trial court's credibility findings cannot be reversed on appeal unless the testimony is incredible on its face or inherently improbable].)

Second, when a trial court finds all or part of a witness's testimony is *not credible*, appellate courts apply the following rule:  "A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so.  [Citations.]" (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.)  Rational grounds for disbelieving a witness include the factors listed in Evidence Code section 780, which includes the witness's interest in the matter.  (Evid. Code, § 780, subd. (f); see *Pierce v. Wright* (1953) 117 Cal.App.2d 718, 723.)

B.      Express Findings of Fact

The trial court made four express findings of fact when it determined Davis violated the settlement agreement.

1.      *Flags*

The trial court found Davis displayed flags depicting a hand with a raised middle finger on both his utility trailer and his tractor.  Davis does not dispute these findings.  Indeed, Davis's declaration stated he has several flags showing a hand displaying the middle finger and the "flags are normally mounted on my tractor and trailer."  Davis described the flags as humorous pieces of art.  He asserted the flags are moved around his property and are "not directed at any particular person or location."  In contrast, Mrs. Hall testified the trailer with the flag was approximately 75 to 100 feet from her daughter's room and had not moved in six months.  Based on the parties' declarations, testimony and photographs, we conclude substantial evidence supports the trial court's findings that

11.

Davis displayed flags on his trailer and tractor and those flags depicted a hand with a raised middle finger.

2. *Displays of Middle Finger*

The trial court also found "Davis displayed the middle finger at the Hall residence [] numerous times while opening and closing his gate on the easement road." Part of the evidence supporting this finding is the declaration of Hall's wife, which stated:

> "On at least four other occasions in the past year, Mr. Davis displayed his middle finger at our house and family and/or displayed his middle finger while opening or closing the gate. The dates of these occurrences were: 6/23/17, 6/24/17, 9/12/17, and 12/29/17."

In addition, Mrs. Hall testified during the June 13, 2018 hearing about Davis displaying his middle finger to her or her family. During direct examination, Mrs. Hall stated she personally had seen him do so about four times while he opened or closed the gate to his property. When asked if Davis was facing her house when it occurred, Mrs. Hall said: "Yes, because of the position—where the window looks down, or at least that my daughter's room looks down into the cul-de-sac, we can see his gate. And as he's closing and opening the gate[,] he's pushing it with his middle fingers."

During cross-examination, Mrs. Hall testified that Davis did not raise his arm toward her, "but pushed the gate with his middle finger." After this answer, the exchange continued:

> "Q. Now, you've described a kind of horizontal motion with your hands.
>
> "A. Raise. Push. This way. Shall I?
>
> "Q. So that's —
>
> "A. That's how I saw it.
>
> "Q. Right. If the record would reflect that you were using both hands in a pushing motion, more or less horizontal and parallel to the floor. Is that correct?

"A.     Hands were like this with the middle finger displayed pushing the gate. Not like this."

After confirming the gate was a standard metal lane-wide cattle-type gate, the trial court asked:  "You are indicating what you saw was Mr. Davis pushing the gate with the middle finger in each hand?"  Mrs. Hall answered, "Yes.  The top part has the lock or the chain, and he pushes it ever so slowly and slowly opens the gate and slowly closes the gate.  He doesn't — [¶] … [¶] … speed it up."

We conclude the declaration and testimony of Mrs. Hall constitutes substantial evidence supporting the trial court's explicit finding that Davis displayed his middle finger at the Hall residence on numerous occasions when he was opening and closing the gate to his property.  Furthermore, the declaration and testimony support the implied finding that Mrs. Hall was in the residence during these displays and, thus, the displays were made in the direction of, or at, Mrs. Hall.

### 3.     *Loud Music*

The trial court found Davis "played loud music, which was in excess of 80 decibels that — at least as measured at the Hall's residence — and the Court would note the testimony, which was uncontroverted, that the music was strong enough to shake the floorboards at the Hall residence."  Davis contends this statement is simply not true because he did contest the allegation and, furthermore, Mrs. Hall never testified his music shook the floor or floorboards.

Davis notes he testified (1) his music was never over 80 decibels; (2) he had a sound level meter that measured decibels; (3) he had measured the sound level at his property line; and (4) the sound level was only at 50 decibels.  In Davis's view, it was a mistake for the trial court to state the testimony the floors shook was uncontroverted.  He contends "the evidence contradicts the Court's finding."  In short, Davis asserts the trial court erred in finding he played music in excess of 80 decibels.

13.

The first part of our analysis of Davis's attempt to demonstrate reversible error addresses his reliance on his own testimony to establish what actually happened. His reliance implies that the trial court found, or was required to find, his testimony about the volume of his music was credible and accurate. The applicable rules of appellate review prohibited us from concluding the court found his testimony was credible or, alternatively, the court was required to find his testimony credible. Absent an express credibility finding, we must infer the trial court resolved questions of credibility in a manner that supports the trial court's findings and order. (See *Schild v. Rubin*, *supra*, 232 Cal.App.3d at p. 762.) Thus, we must conclude the trial court impliedly found Davis's testimony about the volume of his music was not credible. Next, we must accept the implied credibility finding if there was any rational ground for disbelieving Davis. (See *In re Jessica C.*, *supra*, 93 Cal.App.4th at p. 1043.)[3] The obvious, rational ground for disbelieving his testimony is his interest in the matter being litigated. (See Evid. Code, § 780, subd. (f); *Pierce v. Wright*, *supra*, 117 Cal.App.2d 718, 723 [court is not bound to believe interested witness].) Therefore, Davis has not demonstrated the trial court erred when it disbelieved his testimony that his music did not exceed 80 decibels at the property line.

The second part of our analysis of Davis's argument about the decibel level of his music addresses whether the trial court could reasonably infer from the testimony of Mrs. Hall that Davis's music exceeded 80 decibels at the property line. Mrs. Hall testified during direct examination that in May 2014 Davis had played music "where my windows vibrate. I'm sitting at our kitchen table and things vibrate on the table." Mrs. Hall also was asked: "Was there another event of that music being played at a level which shook your floor, on June 11, 2018?" Mrs. Hall answered: "Yes. When he's playing his music

---

**3**     We note Davis's appellate briefs did not address this legal standard and, thus, did not demonstrate there was no rational ground for disbelieving him.

14.

loud it vibrates things in the house, objects in our house." Davis's view of this testimony is stated in his opening brief: "While she answered affirmatively, she never testified the floors shook."

Whether Mrs. Hall's affirmative answer to the question was a statement that the floor vibrated was a matter of interpretation. Based on the trial court's explicit finding, it is clear the trial court interpreted her affirmative answer as testimony that the music vibrated the floor. Mrs. Hall's elaboration of her answer stating the loud music vibrates things in the house does not contradict the trial court's interpretation because the floor is a thing in the house. Therefore, we conclude the trial court did not err when it accepted Mrs. Hall testimony as accurate and found the "music was strong enough to shake the floorboards at the Hall residence." Furthermore, when the court stated Mrs. Hall's testimony "was uncontroverted," it is reasonable to infer the court meant the evidence was not *directly* contradicted by testimony of someone else who was there and perceived the effect of the music inside her house. (See Evid. Code, § 410 [definition of direct evidence].)

The trial court's explicit finding about vibration in the residence necessarily implies the court found Mrs. Hall's testimony about the vibration credible. This implied finding of credibility withstands appellate review because such a finding is rejected only if the testimony in question is incredible on its face, inherently improbable or wholly unacceptable to reasonable minds. (*Nevarez v. Tonna*, *supra*, 227 Cal.App.4th at p. 786.) Here, the testimony that the music caused the floor and other things to vibrate is not, under the circumstances presented, incredible on its face, inherently improbable, or wholly unacceptable to reasonable minds.

To summarize, we conclude the trial court did not commit factual error when it found Davis's music caused the floor in the Hall residence to vibrate. Under California law, the testimony of a single witness, even a party, may alone constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) Furthermore, Mrs. Hall's

15.

testimony about vibration reasonably supports the inference that Davis's music exceeded 80 decibels at the Hall residence. Accordingly, the court's explicit finding about the decibel level of the music is supported by substantial, albeit circumstantial, evidence.

II.    ENFORCING THE SETTLEMENT AGREEMENT

A.    Legal Principles

Section 664.6 promotes California's policy of encouraging voluntary settlements by providing an expedited procedure for enforcing a settlement agreed upon by the parties. (*Osumi, supra,* 151 Cal.App.4th at p. 1360.) This procedure permits the entry of a judgment on the settlement without the filing of a new lawsuit. Section 664.6 provides in full:

> "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6, subd. (a).)

An often-litigated, threshold issue is whether an enforceable settlement agreement was formed by the parties. (E.g., *Osumi*, *supra,* 151 Cal.App.4th at p. 1360; *Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533 (*Kohn*).) Here, the parties agree they entered into a written settlement agreement. Davis's arguments address the interpretation of the agreement and the application of that interpretation to the facts presented.

A settlement agreement is a contract; it is governed by the legal principles that apply to contracts generally, including the principles that govern the interpretation of contractual terms. (*J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 9.) For instance, "courts generally are responsible for protecting the parties' objectively reasonable expectations under a contract by determining the objective meaning of the contract's language." (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th

16.

370, 393, fn. 16; see Civ. Code, § 1649].)  Under California's objective approach to contract interpretation, a parties' undisclosed subjective intent or understanding is irrelevant.  (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.)

B.      Davis Violated the Settlement Agreement

The question of whether Davis violated the settlement agreement is easily resolved by the findings of fact that Davis (1) played music that exceeded 80 decibels and (2) displayed his middle finger at the Hall residence when Mrs. Hall was inside.  These actions are expressly prohibited by the settlement agreement.

1.      *Loud Music*

Paragraph A.2 of the settlement agreement contains Davis's agreement not to play music "at a sound loud enough to reach 80 decibels at the property of the Hall property." Paragraph A.5 stated Davis agreed not to disturb the peace of the Halls.  Applying these provisions to the trial court's finding that Davis "played loud music, which was in excess of 80 decibels" leads to the conclusion that Davis violated both paragraphs of the settlement agreement.

2.      *Displays of Middle Finger*

Paragraph A.3 of the settlement agreement stated Davis agreed "not to flip off (displaying his middle finger at)" Hall, Mrs. Hall or their children.  The trial court found that "Davis displayed the middle finger at the Hall residence [] numerous times while opening and closing his gate on the easement road."

Davis's arguments suggest that he interprets the contractual phrase "displaying his middle finger at" to mean the back of his hand must face the Halls and the middle finger must be upright (rather than horizontal to the ground) before a violation occurs.  Such an interpretation is not objectively reasonable because the phrase "displaying his middle finger at" which makes no reference to the positioning of the back of the hand or the orientation of the middle finger being displayed.

17.

Davis's arguments also suggest his actions did not violate the settlement agreement because using his middle finger to open or close the gate was not a "display" and, if it was a display, it was not directed "at" Mrs. Hall or her children. We reject the interpretation that treats intent or awareness as a requirement inherent in the terms "displaying" and "at." The agreement does not state Davis will not "knowingly" or "intentionally" display his middle finger at the Halls. In addition, Davis points to no extrinsic evidence that makes it reasonable to infer such a limitation was intended by the parties. Rather, the terms of the agreement show the Halls were indifferent to Davis's state of mind, a fact they could not directly perceive, and were concerned with his physical actions. The bargain struck encompassed the physical act described, regardless of whether Davis knew, or should have known, that a member of the Hall family would see the act. In other words, when Davis displayed his middle finger at the Hall residence while opening and closing his gate, he took the risk that a member of the Hall family would see him and his violation of the agreement.

### 3. Summary

The foregoing violations of the settlement agreement provide an adequate basis for concluding the trial court correctly entered a judgment enforcing the settlement agreement pursuant to section 664.6. Consequently, this opinion need not address whether Davis's displays of his flags constituted additional violations of the settlement agreement. We simply note the language relevant to the flag displays is found in paragraph A.5 of the agreement, which stated "Davis agrees not to harass [or] disturb the peace" of Hall, Mrs. Hall or their children.

18.

III.  CIVIL HARASSMENT RESTRAINING ORDER

A.  Applicable Legal Principles

1.  *Grounds for Restraining Order*

Section 527.6, subdivision (a)(1) provides that a victim of "harassment … may seek a temporary restraining order and an order after hearing prohibiting harassment." The statute defines "harassment" as follows:

> "[U]nlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6, subd. (b)(3).)

"Course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."  (§ 527.6, subd. (b)(1).)  The definition provides a nonexclusive list of examples of a course of conduct, "including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means."  (*Ibid.*)

2.  *Procedures and Evidence*

A party may seek a temporary order and an order after hearing by filing a petition requesting that relief.  (See § 527.6, subds. (d), (g).)  The party responding to the petition "may file a response that explains, excuses, justifies, or denies the alleged harassment or may file a cross-petition under this section."  (§ 527.6, subd. (h).)  The statute provides for continuances and establishes deadlines for holding a hearing on the petition, which are affected by whether a temporary restraining order was granted.  (§ 527.6, subds. (f), (g), (*o*), (p)(1).)

"At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry.  If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment."  (§ 527.6, subd. (i).)  An injunction prohibiting "future conduct is only authorized when it appears

19.

that harassment is likely to recur in the future." (*Harris, supra,* 248 Cal.App.4th at p. 496.) The order "may have a duration of no more than five years." (§ 527.6, subd. (j)(1).)

When ruling on a request for a civil harassment restraining order, the trial court is not required to make express findings. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 88.) Instead, the granting of the restraining order itself necessarily implies that the trial court found (1) the defendant knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed or harassed the plaintiff and (2) the plaintiff actually and reasonably suffered substantial emotional distress. (*Id.* at pp. 88–89.)

### 3. *Standard of Appellate Review*

"We review the trial court's decision to grant the restraining order for substantial evidence." (*Harris*, *supra*, 248 Cal.App.4th at p. 497.) "'The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.'" (*Harris*, *supra,* at p. 497; see *R.D. v. P.M., supra,* 202 Cal.App.4th at p. 188 [existence or nonexistence of substantial evidence is a question of law].)

When "assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in ... section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review. We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin, supra,* 232 Cal.App.3d at p. 762.) Appealed orders are presumed

correct, and the burden is on an appellant to affirmatively demonstrate the trial court committed an error that justifies reversal of the order. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Because the clear and convincing standard of proof is set forth in the statute, we consider how that affects our review of the sufficiency of the evidence supporting the trial court's express and implied findings of fact. As background, we note that in criminal cases, "[t]he substantial evidence test asks only 'whether substantial evidence supports the conclusion of the trier of fact, *not whether the evidence proves* essential facts beyond a reasonable doubt, or by clear and convincing evidence.' " (*People v. Clements* (2021) 60 Cal.App.5th 597, 615.) Similarly, in the context of civil cases, "an appellate court reviewing a finding made pursuant to the clear and convincing standard does not reweigh the evidence itself." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008.) "[A]n appellate court reviewing such a finding is to view the record in the light most favorable to the judgment below; it must include reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the fact finder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment." (*Ibid*.) Thus, "the question before a court reviewing a finding that a fact has been proved by clear and convincing evidence is not whether the appellate court itself regards the evidence as clear and convincing; it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof." (*Id*. at p. 1009.)

B.    Davis's Course of Conduct

The trial court's issuance of the restraining order implies the court found, by clear and convincing evidence, that Davis knowingly and willfully engaged in a course of conduct directed at the Halls that (1) seriously alarmed, annoyed, or harassed them, (2) served no legitimate purpose, (3) actually caused them substantial emotional distress, and

21.

(4) would have caused an objectively reasonable person to suffer substantial emotional distress. (§ 527.6, subd. (b)(3); see *Cooper v. Bettinger*, *supra*, 242 Cal.App.4th at pp. 88–89.)

### 1. *Explicit Findings*

Initially, we consider whether the explicit findings of fact made to support the judgment enforcing the settlement agreement survive the substantial evidence standard of review when applied to facts that must be proven by clear and convincing evidence. In the circumstances of this case, we conclude the four explicit findings are supported by sufficient evidence even considering the heightened standard of proof.

### 2. *Implicit Findings*

Before identifying specific implied findings of fact, we consider whether the relevant "course of conduct" for purposes of section 527.6 is limited to Davis's acts after the settlement agreement was signed. We conclude the statute does not limit the relevant course of conduct to acts occurring after a settlement agreement. Similarly, nothing in the settlement agreement alters the meaning of the statutory phrase "course of conduct." We infer the trial court considered pre-agreement conduct based on its statement that it had reviewed and considered the testimony and exhibits presented at the July 11, 2016 hearing. Therefore, we conclude the trial court properly interpreted and applied subdivision (i) of section 527.6, which states "the judge shall receive any testimony that is relevant, and may make an independent inquiry."[4] (See generally, Evid. Code, § 210 [relevant evidence defined].)

---

[4] We have joined other courts interpreting this provision "to mean hearsay evidence, such as a declaration or police report, is admissible during hearings conducted pursuant to section 527.6." (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 521.) Thus, the trial court committed harmless evidentiary error when it excluded reports of the sheriff's department on hearsay grounds.

First, Davis contends this case does not involve any unlawful violence or any threat of unlawful violence. (See § 527.6, subd. (b)(3) [definition of harassment included unlawful violence and credible threats of violence].) This self-serving view of the evidence overlooks the June 2016 incident at the mailbox where Davis drove his Corvette within two or three feet of Hall. At a minimum, driving a car that close to someone else conveys a credible threat of injury through physical contact (i.e., violence). It also overlooks Davis's statement to Hall in February 2012 when Davis said, "You do that again, and you're gone." In context, "do[ing] that again" is reasonably interpreted to mean coming onto Davis's property to complain about noise and "you're gone" is reasonably interpreted as "I will kill you." Davis's threat was credible because of the weapons he possessed and the isolation of the property (i.e., the lack of witnesses that might deter his acting on the threat).

Davis's reply brief states he flatly denies ever driving recklessly in Hall's direction and nearly hitting him. His brief does not support this statement with a citation to evidence in the record. Under applicable principles of appellate review, we must infer the trial court found Hall's testimony at the July 2016 hearing provided clear and convincing evidence that Davis did drive his car close to Hall and this did cause Hall to immediately experience shock and fear. We further infer the court found that Davis experienced emotional distress once the initial effect subsided. We conclude Hall's longer-term distress was objectively reasonable because Davis's conduct was escalating. When the totality of Davis's actions are considered—going back to the February 2012 incident of loud music and the threat to Hall's life—Hall saw that Davis's misconduct was escalating and it was reasonable for Hall to worry about what Davis would do in the future. Thus, Davis's threat in February 2012 and his giving Hall a scare with his Corvette in June 2016 are correctly viewed as a part of his course of conduct and provides context for the court's evaluating the emotional impact of Davis's later actions.

Davis refers to the statutory definition of "harassment" and argues Hall did not allege or prove there was any emotional distress. (§ 527.6, subd. (b)(3).) In Davis's view of the evidence, the Halls' "conduct was not that of people in distress, but rather of lying in wait, of seeking to watch [Davis] while he was engaged in lawful activity on his property and then further to imagine some sort of distressful behavior." Davis contends his actions "certainly would not cause a reasonable person to suffer any substantial emotional distress, nor did [Hall] allege any emotional distress in his pleading or testimony."

Here, the trial court rejected Davis's view and impliedly found the statutorily required emotional distress existed and was reasonable under the circumstances.[5] Our review of the sufficiency of the evidence to support the implied finding of substantial emotional distress includes the testimony of Mrs. Hall. When asked if she was frightened of Davis, Mrs. Hall answered:

> "Yes. He makes me nervous. I think he's just — I don't know why he's so angry, and he seems to always want to do something to annoy us, scare us. I'm nervous for my children. Like I said, my daughter's in a wheelchair. She's only seven years old.… I will not go outside without my husband present or let my children play outside. I think he's a time bomb. I think he's just — he's just so angry for whatever reason."

It was reasonable for the trial court to infer from this testimony that Mrs. Hall experienced substantial emotional distress. The Halls attempted to obtain peace of mind by entering into a settlement agreement with Davis. Davis violated that agreement by displaying his middle finger towards the Halls' residence when Mrs. Hall and the children were inside and by playing loud music. Furthermore, Davis made his hostility toward the Halls and their children plain by parking his trailer with a flag showing a

---

**5** One reason the trial court properly rejected Davis's argument about emotional distress is that it is tainted by Davis's erroneous belief that he complied with the settlement agreement.

raised middle finger, so the flag faced the daughter's bedroom window. The unremitting nature of his hostility was demonstrated by the fact Davis left the trailer in that position for six months. When these actions and the surrounding circumstances, including the written agreement not to "flip off" Hall, Mrs. Hall or their children, they are reasonably interpreted as Davis's attempts to evade the literal terms of his agreement and seriously annoy or harass Mrs. Hall and the children. (See § 527.6, subd. (b)(3).) Davis succeeded in these attempts and caused Mrs. Hall substantial emotional distress.

Next, we consider the sufficiency of the evidence to support the implied finding that Davis's course of conduct caused Hall to experienced substantial emotional distress. As described earlier, Hall testified about how he reacted emotionally to the July 2016 incident at the mailboxes, stating he was shocked someone would do that and he "was pretty scared about the whole thing." On the question of whether the record needed to contain explicit testimony from Hall about the emotions he experienced as a result of Davis's post-agreement conduct, we conclude it is not necessary because the circumstantial evidence strongly supports a finding that Hall—a husband and father who was aware of the effect Davis's conduct was having on his family—reasonably experienced the required distress.

Accordingly, we conclude the trial court did not err in finding that Davis knowingly and willfully engaged in a course of conduct directed at the Halls that (1) seriously alarmed, annoyed, or harassed them, (2) served no legitimate purpose, (3) actually caused them substantial emotional distress, and (4) would have caused an objectively reasonable person to suffer substantial emotional distress. (§ 527.6, subd. (b)(3).) Thus, the trial court did not err in issuing the civil harassment restraining order.

## DISPOSITION

The judgment and the civil harassment restraining order are affirmed.  Hall shall recover his costs on appeal.

FRANSON, Acting P.J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

26.